The Washington Mutual Insurance Company *v.* The Merchants and Manufacturers' Mutual Insurance Company.

Original action in covenant on sealed policy for reinsurance, for six months, by plaintiff in error to defendant in error, against loss or damage by fire, to the amount of $4,000, on $8,000 as insured by defendant in error, to D. W. & Co., on *stock of flour, grain and cooperage*, contained in their *stone and brick steam flouring mill*, with cement roof and detached from other buildings, known as the "City Mills." Policy contained conditions prohibiting the buildings, or any part thereof, from being used for any trade, business, or vocation declared hazardous in annexed conditions, among which were specified mills, manufactories, and mechanical operations requiring fire heat. Property destroyed by fire during term of insurance. Defense claimed that the use of a *kiln-drying corn meal mill*, requiring fire heat in the buildings, avoided the policy. Held :

That the question whether the use of a fire-kiln for drying corn, in connection with a corn meal mill, as well as the question whether the use of a corn meal mill itself, was an incident to, or an ordinary and appropriate part of the business of a steam flouring mill, were matters of fact, proper for determination by the jury, and *not by the court.*

That, if the use of a corn meal mill, in connection with a fire-kiln for drying corn or meal, was not *a known* or *usual incident*, or an appropriate part of the ordinary business of a steam flouring mill, the introduction of such a business into this flouring mill, was a breach of the conditions of the policy, and rendered it inoperative.

Where the charge of the court to the jury is calculated to confuse and mislead the jury, as to the law of the case, there is error for which a judgment may be reversed.

In the insurance of property in a manufacturing establishment, the underwriter is presumed to have in contemplation the casualties of the business connected with its *usual* and *appropriate* mechanical operations ; but if a new invention or improvement, not in common use, be introduced, materially increasing the risk, *without the consent* of the underwriter, it may render the policy inoperative.

In error to the Superior Court of Cincinnati.

The action below was covenant on a sealed policy of reinsurance, by which, on the 26th day of October, 1847, the Washington Mutual Insurance Company insured the Merchants and Manufacturers' Insurance Company " against loss or damage, by fire, to the amount of four thousand dollars on $8,000, as insured by them to D. White & Co., on stock of flour, grain, and cooperage, contained in their stone and brick steam flouring mill, with cement roof, and detached from all other buildings, situated in the city of Madison, Indiana, and known as the ' City Mills.' "

It is further provided in the policy, " that, in case the above mentioned buildings, or any part thereof, shall hereafter be appropriated, applied, or used to or for the purpose of carrying on or exercising therein any trade, business, or vocation, denominated hazardous in the conditions annexed to this policy, or for the purpose of storing therein any of the articles, goods, or merchandise in the conditions aforesaid, denominated hazardous, unless herein otherwise especially provided for, or hereafter agreed to by said company, and indorsed upon this policy, then and from thenceforth, so long as the same shall be so appropriated, applied, or used, these presents shall cease, and be of no force or effect."

Among the trades, etc., denominated hazardous in the conditions of insurance, and classes of hazards referred to in the body of the policy, are " grist mills, fulling mills, saw mills, paper mills, and other mills, manufactories or mechanical operations requiring fire heat."

The conditions of insurance further declare, that " a false description of the property by the insured shall render void a policy issued upon such description, but the company will be responsible for the accuracy of the surveys made by their agents."

The property was destroyed by fire during the term of insurance.

The suit was commenced in the old superior court of Cincinnati ; and that court ceasing to exist, the cause came into the court of common pleas, and from thence was taken by agreement to the new superior court.

The declaration was filed on the 27th day of May, A. D. 1850.

July 3d, A. D. 1850, the defendant filed five pleas, viz :

452        SUPREME COURT OF OHIO.

The Washington Mut. Ins. Co. *v.* The Mer. & Man. Mut. Ins. Co.

1. *Non est factum.*

2. And for a second plea: That before executing the said policy of insurance, to wit, on the 26th day of October, 1847, defendant received from plaintiff a written proposition for insurance, in the words and figures following, to wit: ·" Reinsure the Merchants and Manufacturers' Mutual Insurance Company in the sum of $4,000 on $8,000, insured by them to D. White & Co., on stock of flour, grain, and cooperage contained in their stone and brick flouring mill, with cement roof, and detached from all other buildings, situated in the town of Madison, Ind., and known as the ' City Mills,' for six months. A. M. Searles, Sec'y. Cincinnati, October 26, 1847." Which proposition contains the whole and sole representation or description given by the plaintiff to the defendant of the property to be reinsured, and upon which said policy was issued. And the defendant in fact says that the said building, instead of being a stone and brick steam flouring mill, and no more, was, at the date of said policy, used, not only as a steam flouring mill, but also was used for a kiln-drying corn meal mill, having all the machinery and fixtures usual and necessary for kiln-drying corn meal, in complete working order, and intended to be used during the time covered by said policy, and in actual use at the time of said loss by fire ; which fact of said building containing and being used for such kiln-drying corn meal mill, was wholly concealed by the plaintiff from the defendant, and of which defendant had no notice or knowledge whatever until after the alleged loss by fire, and which did and does materially increase the risk of insuring property in such a building, and would, if known, have greatly enhanced the premium of insurance, or have induced the defendant to have declined it altogether.        *        *        *        *        *

3. And for a third plea: That before executing the said policy of insurance, to wit, on the 26th day of October, 1847, defendant received from the plaintiff a written proposition (being the same set out in the second plea) for reinsurance; which proposition contains the whole and sole description given by the plaintiff to the defendant, of the property to be reinsured, and upon which the said policy was issued. And the defendant in fact says, that

the said building, instead of being a stone and brick steam flouring mill, and no more or other, was at the date of said policy used for a kiln-drying corn meal mill, having all the machinery and fixtures usual and necessary for kiln-drying corn meal, in complete working order, and intended to be used during the time covered · by said policy, and in actual use at the time of said loss by fire. And so the defendant says that the description so given by the plaintiff of the said building, was a false description within the true intent and meaning of the conditions annexed to said policy, which, by the terms thereof, was to render the same null and void.

4. And for a fourth plea : That by the tenor and effect of the said policy of insurance, the plaintiff on its part, warranted to the defendant, that during the said term of six months for which the said insurance was made, the said building containing the said stock of flour, grain, and cooperage, should only be used as and for a steam flouring mill, and for no other purposes. Yet the defendant in fact says, that during the said term, and at the time of the said loss by fire, and on divers days before that time, the said building was used for a kiln-drying corn meal mill, having all the machinery and fixtures usual and necessary for kiln-drying corn meal, which said machinery and fixtures form no part of, or appendages to, a steam flouring mill. And so the defendant says that the plaintiff has not kept its said warranty, but has broken the same, and thereby discharged the defendant from any liability on said policy.

5. And for a fifth plea : That by the tenor and effect of said policy of insurance, and of the conditions annexed thereto, it was agreed between the said parties, that if the said building, or any part thereof, should thereafter be used for the purpose of carrying on any business or operation denominated hazardous in the conditions annexed to said policy, unless therein otherwise specially provided for, or thereafter agreed to by the defendant and indorsed upon said policy, the same should cease to be binding on the defendant. And among the things denominated hazardous in said conditions, are included all mills, manufactories, or mechanical operations requiring fire heat. And the defendant in

454        SUPREME COURT OF OHIO.

The Washington Mut. Ins. Co. *v.* The Mer. & Man. Mut. Ins. Co.

fact says, that after the making of the said policy, and at the time of the said loss by fire, and on divers days before that time, without any special provision therefor in said policy, or any agreement by the defendant indorsed on said policy, the said building was used for a kiln-drying corn meal mill, which is a mill, manufactory, or mechanical operation requiring fire heat. And so the defendant says, that by reason of the premises, the said policy has ceased to be binding upon defendant.

On the 8th January, A. D. 1851, the plaintiff filed general and special demurrers, viz:

Demurrer to second plea: And for causes of demurrer, besides those which may be taken advantage of on general demurrer the plaintiff shows the following, to wit:

1. The allegation that the mill contained machinery and fixtures usual and necessary for kiln-drying corn meal, is argumentative, and by way of recital, and is not direct and positive.

2. The plea is uncertain in this: 1st. The allegation of intention to use the machinery is uncertain, in not alleging who intended to use the same, whether the plaintiff, or D. White & Co., or other persons, with the consent of plaintiff, or D. White & Co. 2d. The allegation of the actual use of said machinery is uncertain, in not stating by whom used; or with the knowledge and consent of the plaintiff, or of D. White & Co. 3d. The plea is uncertain in this: It alleges the concealment of the fact of the building containing and being used for such kiln-drying corn meal mill, without any sufficient description of anything of the kind. 4th. It is also uncertain in alleging the concealment of facts by the plaintiff, without averring knowledge in the plaintiff at the time of the existence of these facts.

3. The said plea is double, in this: 1st. It alleges the existence of an intention at the time of obtaining the policy to use the machinery for kiln-drying corn meal in said building; and 2d, the actual use of such machinery. The plea is also double in this: it alleges, 1st, the concealment of the fact of the building containing a kiln-drying corn meal mill; and 2d, also concealing the fact of the building being used for a kiln-drying corn meal mill.

Demurrer to third plea: And for causes of demurrer besides

DECEMBER TERM, 1856. 455

The Washington Mut. Ins. Co. *v.* The Mer. & Man. Mut. Ins. Co.

those which may be taken advantage of on general demurrer, the plaintiff shows the following, to wit:

1. The plea is uncertain in this: 1st. It does not aver who used the said building for a kiln-drying corn meal mill; also in this: 2d. That it does not aver that plaintiff had at the time any knowledge that it was so used; also uncertain, 3d. In not averring that the building, in its construction, external, or internal, was different from that described by the plaintiff. It is also uncertain: 4th. In not specifying in what particular the description is false.

Demurrer to fourth plea: And for causes of demurrer besides those which may be taken advantage of on general demurrer, the plaintiff shows the following, to wit:

1. The plea is uncertain for want of an averment that the building was not at the time the policy issued, and did not continue to be, a steam flouring mill. It is also uncertain in not alleging who used the building for a kiln-drying corn meal mill, whether the plaintiff, or D. White & Co., or others. It is uncertain in not alleging that the use of the building for such a purpose was with the knowledge or consent of plaintiff.

2. The averment that the building contained the machinery and fixtures usual and necessary for kiln-drying corn meal, is argumentative, by way of recital, and is not direct and positive.

Demurrer to fifth plea: And for causes of demurrer besides those which may be taken advantage of on general demurrer, the plaintiff shows the following, viz:

1. The plea is uncertain in not averring who used said building for a kiln-drying corn meal mill, or that it was so used with the knowledge or consent of plaintiff, or of D. White & Co. It is also uncertain in this: It does not aver that any trade was carried on or exercised in said building, denominated hazardous in the conditions annexed. It is also uncertain, for want of allegation of time when said building was used for a kiln-drying corn meal mill.

2. The allegation that a kiln-drying corn meal mill, is a "mill, manufactory, or mechanical operation, requiring fire heat," is in the alternative.

At the June term, 1851, the demurrers were sustained, and the defendant, on leave, filed, January 19, 1852, the three following pleas, viz:

6. And for a sixth plea in this behalf, the defendant says, that after the making of the said policy, and at the time of the said loss by fire, and on divers days before that time, without any special provision therefor in said policy, the said building was used, by and with the consent of said D. White & Co., for the purpose of carrying on therein a kiln-drying corn meal mill, which is a mill requiring fire heat.

7. That after the making of the said policy, and at the time of the said loss by fire, and on divers days before that time, without any special provision therefor in the policy, or any agreement therefor by the defendant indorsed on said policy, the said building was used, by and with the consent of said D. White & Co., for the purpose of exercising and carrying on therein a kiln-drying corn meal mill, which is a manufactory requiring fire heat.

8. That after the making of said policy, and at the time of said loss by fire, and on divers days before that time, without any special provision therefore in said policy, or any agreement therefor by the said defendant indorsed on said policy, the said building was used by the said D. White & Co. for the purpose of carrying on the business of kiln-drying corn meal, which is a mechanical operation requiring fire heat.

On the 24th of January, 1852, plaintiff filed demurrers to the sixth and seventh pleas, and three replications to the eighth plea, as follows, viz:

To the sixth and the seventh pleas, each, a general demurrer.

First replication to the eighth plea: That the said building was not appropriated and used, by said D. White & Co., after the making of said policy, and at the time of said loss, for the purpose of carrying on the business of kiln-drying corn meal, without any provision therefor in said policy, as the defendant has in said eighth plea alleged.

Second replication to eighth plea: That at the time of the making of said policy, and at the time of said loss, said building was a steam flouring mill, having, as a part of the machinery

DECEMBER TERM, 1856.  457

The Washington Mut. Ins. Co. v. The Mer. & Man. Mut. Ins. Co.

thereof, the apparatus for kiln-drying corn meal, and the business of kiln-drying corn meal, as carried on therein, was an incident to the business of said flouring mill.

Third replication to eighth plea: That at and before the time of the making of said policy, and at the time of said loss, the said building described in said policy, was a large stone and brick building, situated in the city of Madison, Indiana, having all the machinery necessary for grinding wheat, corn, and other grains, kiln-drying corn meal, and bolting flour of various kinds, constituting a steam flouring mill, and its machinery had been used for said purposes; and at the time of the making of said policy, and before then, and from thence to and at the time of said loss, said building, with said machinery, was known as the "City Mills," and the plaintiff avers that the business of kiln-drying corn meal, as carried on in said building, was at the said several times aforesaid, and before then had been, a part of the regular business and use of said City Mills, and of the machinery thereof.

At same term, January, 1852, plaintiff's demurrers to the sixth and seventh pleas were overruled and leave given to reply; and defendant's demurrer to plaintiff's second replication to the eighth plea, was sustained, and leave given to amend the replication; and defendant's demurrer to plaintiff's third replication to the eighth plea, was argued and taken under advisement.

At the April term, 1852, defendant's demurrers to second and third replications to the eighth plea, were sustained, and leave to file new replication to eighth plea granted.

At the October term, 1854, of the superior court, leave was granted to parties to amend the pleadings; and thereupon the plaintiff re-filed its second and third replications to the eighth plea, and defendant re-filed its demurrer thereto.

The second and third replications, as finally amended, were precisely the same as those above recited, with the exception that, instead of the words, "was an incident to the business of *said flouring mill*," the second replication had, "was an incident to the business of *flouring mills*;" and, instead of the words, "a part of the *regular* business, and *use of said* 'City Mills,' and

458     SUPREME COURT OF OHIO.

The Washington Mut. Ins. Co. *v.* The Mer. & Man. Mut. Ins. Co.

*of the machinery thereof,*" the third replication had, " a part of the business of *a steam flouring mill.*"

At the December term, 1854, the cause came on to be heard on the demurrers of the defendant to the second and third replications to the eighth plea, and the court being fully advised in the premises, overruled the demurrer to the said second replication, and granted leave to defendant to file a rejoinder; and sustained the demurrer to the said third replication.

And, by leave of court, the plaintiff came and filed a third amended replication to the said eighth plea, and defendant re-filed its demurrer; and the cause coming on to be heard upon the said demurrer, the court overruled the same, and gave leave to defendant to file a rejoinder to the said replication.

Defendant, by way of rejoinder to the second amended replication to its eighth plea, traverses the same, and says that at the time therein mentioned, the apparatus for kiln-drying corn meal was not a part of the machinery of a steam flouring mill, nor was the business of kiln-drying corn meal, as then carried on therein, an incident to the business of steam flouring mills.

And by way of rejoinder to the third amended replication to their eighth plea, defendant also traverses the same, and says that the kiln-drying of corn meal, as carried on in the said building, at the said times, was not a part of the business of a steam flouring mill.

Upon these pleadings a trial was had, and a bill of exceptions was allowed, which shows:

That on the trial of this cause in the superior court of Cincinnati, at the December term, A. D. 1854, the plaintiff, to maintain the issue on its part, offered in evidence the policy of insurance in the declaration and pleas recited, the execution of which was admitted by the defendant; and the plaintiff also proved the amount of the loss to be greater than the amount insured by the said policy, and rested.

The defendant examined C. W. West as a witness, and among other things asked him: How the kiln-drying corn meal mill affected the risk of fire? To this question the plaintiff's counsel objected, and the court sustained the objection.

The defendant's counsel also asked said witness whether Insurance Companies regard the kiln for drying corn meal as material to the risk of fire ? To which question plaintiff's counsel objected, and the court sustained the objection.

The defendant then called as a witness John Young, who testified that he had been for many years an underwriter in the city of Cincinnati, and the defendant's counsel thereupon asked him what was understood among underwriters by the expression: " A steam flouring mill ?" To which question the plaintiff's counsel objected, and the court sustained the objection, it not being claimed that this expression had any peculiar meaning with underwriters different from what it had among men at large. The defendant's counsel then asked said last named witness whether he had insured steam flouring mills with corn meal drying kiln attached ? To which question said witness answered, that he had. Defendant's counsel then asked him, if in insuring flour mills with a kiln-drying corn meal mill attached, it was customary to have the kiln-drying corn meal mill mentioned in the policy ? Plaintiff's counsel objected to said question on the ground of irrelevancy and incompetency, and the court sustained said objection.

Benjamin Uner, was called as a witness by the defendant and testified, that he had been an insurance agent since the year 1847, in the city of Cincinnati. And the defendant's counsel then asked witness whether or not he regarded a kiln-drying corn meal mill as an incident to a steam flouring mill ? To which question plaintiff's counsel objected on the ground of incompetency, and the court sustained the objection.

William Goodman was called as a witness by defendant, and testified, that he was president of the Washington Insurance Company, and had been many years engaged in the business of insuring in Cincinnati. The defendant's counsel then asked him whether said Washington Insurance Company did ever knowingly insure anything in a building containing a kiln-drying corn meal mill ? To which question the counsel for plaintiff objected, and the court sustained the.objection.

John Elstner was called by the counsel for plaintiff, and testified that he was a miller in Cincinnati, and had been for many

years, and knew, from personal knowledge, in 1846 and 1847, of several flouring mills in Cincinnati and other parts of Ohio, and in Indiana, with kilns for drying corn therein ; and the plaintiff's counsel then asked him whether he had any knowledge, derived from general reputation, of the existence of flouring mills with kilns in them in the years 1846 and 1847. To which question the defendant's counsel objected for incompetency, and the court overruled the objection. To all which rulings of the court the defendant excepted, and prayed that a bill of exceptions in that behalf might be allowed, which was accordingly done.

And there was other testimony on both sides ; and after both parties had rested their evidence, and after the arguments of counsel for both parties had closed, the counsel for plaintiff asked the court to instruct the jury as follows, viz :

1st. That if the jury should find that the mill referred to in the policy was a flouring mill and used for grinding grain for food, the policy in question authorized D. White & Co., to manufacture corn meal, in the building described in the policy ; and the fact that the mill was used for that purpose, at the time of the loss, will not bar the plaintiff from recovering.

2d. That an incident to a trade like the business of manufacturing flour or meal for food, is that which does not necessarily belong to it, but which may happen to it, and if the jury should find as above charged, and that the drying of corn by a kiln was deemed an improvement in the manufacture of meal for a foreign or domestic market, and it was a part of the process of manufacturing corn meal for a foreign or domestic market, then D. White & Co. had a right to use a kiln for that purpose, and the fact that they had such a kiln with fire heat, in use at the time of the loss, is no bar to the plaintiff's right to recover.

And the following instructions were asked by the defendant, viz :

1. The law of this case is the same as if the defendant had insured D. White & Co. directly, instead of making a reinsurance.

2. Under the issues made, if the jury find that a kiln-drying corn meal apparatus was not a part of a steam flouring

DECEMBER TERM, 1856. 461

The Washington Mut. Ins. Co. *v.* The Mer. & Man. Mut. Ins. Co.

mill in the ordinary acceptation of the words, or as these words are used by underwriters, or an incident to the business of manufacturing flour, the verdict must be for the defendant.

3. That in order to be an incident to said business of manufacturing flour, it must be a convenient and appropriate instrumentality in such manufacture, having the relation thereto of means to an end.

4. It is entirely immaterial whether the plaintiff at the time of reinsuring, knew that the kiln was there or not.

5. If the jury find that the kiln-drying corn meal apparatus was either a mill, manufactory, or mechanical operation requiring fire heat, and not there by the express permission of the defendant, or with their express authority, they must find for the defendant.

And the court charged the jury as follows :

" GENTLEMEN OF THE JURY :—The plaintiff in this case seeks a recovery upon a certain policy or contract of insurance, set forth in the declaration, alleged to be executed by the defendant, under seal, bearing date the 26th day of October, 1847, whereby the defendant insures the plaintiff for the term of six months, from that date, in the sum of $4000, against loss or damage by fire, happening during said period, to the stock of flour, grain and cooperage, contained in T. D. White & Co.'s stone and brick flouring mill, etc., situated in the city of Madison, Indiana, known as the ' City Mills,' to be paid to the plaintiff, in case of such loss, within sixty days, after due proof and notice thereof, furnished to the. defendant. The declaration avers the making of the policy by the defendant; that afterwards, within the time specified therein, viz: the       day of           , 1848, said mill, with all the property insured therein, was consumed by fire, of which due notice and proof, as required by the policy, were given to the defendant, on the 17th day of May, 1848, said loss amounting to $8,000, and upwards, which has never been paid, though often demanded.

" This claim is resisted by the defendant on four different pleas :

" The first, simply denying that the policy sued upon is the act and deed of the defendant. Under this plea, all that the plaintiff is required to prove is, the execution and delivery by the defendant to the plaintiff of the policy declared upon, and the amount of the loss happening to the plaintiff by the casualty insured against, both of which have been conceded by the defendant's counsel on the trial, the loss allowed to be $8,000 and upwards. Upon this state of the case alone, the plaintiff would be entitled to recover the amount specified in the policy, being $4000, with interest from the expiration of sixty days after the proof of loss, say from the 16th of July, 1848, up to the first day of the present term.

" But the defendant has pleaded three additional pleas, numbered 6, 7 and 8, the object of which is, (admitting the plaintiff's declaration to be true in other things,) to set forth a breach by the plaintiff of one of the conditions upon which the policy was granted, and upon the breach of which the policy would cease to be in operation, so long as such breach continued. The terms and conditions of the policy to which these pleas refer, are as follows : in the body of the policy it is provided, ' that in case said building, or any part thereof, shall be appropriated, applied, or used, for the purpose of carrying on or exercising therein any trade, business, or vocation denominated hazardous in the conditions of the policy, or for the purpose of storing therein any of the articles, etc., in the conditions denominated hazardous, unless herein specially provided for or agreed to by the company, and indorsed upon the policy, then, and so long as the same shall be so appropriated, applied, or used, these pres ents shall cease and be of no force and effect.' And by the second condition annexed to the policy, it is declared that ' the following trades, goods, etc., are denominated hazardous, viz : Apothecaries, etc., grist mills, fulling mills, saw mills, paper mills, and other mills, manufactories, or mechanical operations reqiring fire heat,' etc.

" The first of these pleas (No. 6) avers, that after the policy was made, and at the time when the loss happened, without any provision therefor in the policy, or any agreement indorsed there-

on, the building described in the policy was used for the purpose of carrying on therein a kiln-drying corn meal mill, which is a mill requiring fire heat.

" The second plea (No. 7) is identical with the first, except that it concludes, ' which is a manufactory requiring fire heat.'

" The third plea (No. 8) is like the others, except that it avers, ' that the building described in the policy was used for the purpose of carrying on the business of kiln-drying corn meal, which is a mechanical operation requiring fire heat.'

" The plaintiff has taken issue upon these three pleas, by general replication—simply denying their truth. This renders it incumbent upon the defendant, in the first instance, to establish the truth of all the material allegations contained in some one of these pleas, in order to defeat the plaintiff's action thereby.

" The points at issue, presented by these several pleas, are two fold : 1st, whether the building was occupied in the manner complained of— that is, in a manner not allowed by the policy. 2d, whether it was thus occupied at the time when the loss happened.

" Upon the first of these questions, it is to be observed, that the building is described in the policy as a ' steam flouring mill,' that is, a mill for the manufacture of flour, propelled by steam. The pleadings do not deny, nor has any proof been offered to show that such was not the character of the building, at the time the loss happened. But it is claimed on the part of the defendant, and proof has been offered by defendant conducing to show, that this building was also used at the time of the loss, for the purpose of grinding or manufacturing Indian corn into meal, which was not the proper business of a flouring mill; and that the plaintiff used a kiln, warmed by fire heat, for the purpose of drying the corn preparatory to grinding ; all which, it is claimed, were neither part of nor incident to a steam flouring mill, but fall within the class of hazards described in the conditions annexed to the policy, as ' other mills, manufactories, or mechanical operations requiring fire heat.

" On the part of the plaintiff it is claimed that the grinding of corn into meal is part of the legitimate business of a flouring

mill; and that the machinery, or apparatus for drying the corn, so as to render the meal suitable for mercantile use, was part and parcel of the mill itself, or at least an incident thereto, and not an independent trade or business, forming a separate class of hazards.

" Perhaps the first appropriate question for your consideration is, in what sense was the expression 'flouring mill' used in this contract. Whether, as claimed by the defendant, in a restricted sense, as applicable to a mill for the manufacture of flour from wheat only; or, as claimed by the plaintiff, in a liberal and enlarged sense, as applicable to a mill for the manufacture of flour from other grains as well as wheat; whether rye, buckwheat, barley, or corn. Many witnesses have been called before you on both sides, to explain the ordinary meaning of this expression, some of whom define it as claimed by the defendant, others support the view of it taken by the plaintiff. Where words are used in a technical sense as applicable to any particular business, different from the usual acceptation of such words, or where words or terms of art are used, referring to any particular trade, art, or science, the testimony of persons engaged in the particular business, art or trade, is received to explain the meaning of such words or terms with great favor; but when words relate to things in common use, with which almost all men are supposed to be familiar, the testimony of witnesses as to the meaning of such words or expressions is of little if any value. The words flour, and flouring mill, are in as common use as almost any other in the English language. They are words of general acceptation, and should be understood by all. In the present case, it is not pretended that the expression ' flouring mill ' has been used in any technical or peculiar sense, different from what it would be generally understood to mean, or that it has any local meaning, not usual elsewhere. In considering, therefore, how it has been used in the present case, it should be taken according to common understanding, of which you, gentlemen, are perhaps the best judges. It cannot be denied that the words ' flour, and flouring mill,' have been used in both senses, as claimed by the parties on either side, and that either would be deemed correct. If both are usual, and it does not clearly appear which was intended, that

DECEMBER TERM, 1856.            465

The Washington Mut. Ins. Co. v. The Mer. & Man. Mut. Ins. Co.

meaning should be put upon the words which is most strong against the defendant, for it is defendant who uses the words in the policy, and they are presumed to speak for the benefit of the insured. Again, where doubt exists as to the meaning of an expression, it is useful sometimes to resort to the context for an explanation. It will be observed, that the subject of the insurance is a ' stock of flour, grain and cooperage, etc., contained in a steam flouring mill.' The word grain, comprehends wheat, corn, rye, buckwheat, barley, and other farinaceous grains. When stored in a mill, it is presumed to be there for the purpose of being ground, unless the contrary appears. If corn and rye, as well as wheat, were stored in this mill at the time of the loss, would they fall within the protection of the word grain? If they would, then for what purpose were they expected to be placed in the mill? If for the purpose of being ground into flour or meal, the use of the mill for such purpose was contemplated by the parties. These, however, are matters for your own determination. Should you be satisfied, upon examination, that the words ' flour mill ' were used to signify a mill for the grinding of grain generally, and that the parties contemplated the building in question would be used during the continuance of the insurance for the grinding of corn and other grains, as well as wheat, then the putting up or using of any apparatus or machinery in connection therewith, for the purpose of facilitating the operation merely, and not as an independent trade, within the class of hazardous trades, etc., set forth in the conditions of the policy, even though fire heat was used therefor, and the hazard actually increased thereby, it would not suspend the operation of the policy, according to the clause above referred to, i. e., under the pleadings in the case. The word ' trades,' used in the conditions annexed to the policy, is intended to signify those occupations or trades of business, which are engaged in, or carried on independent of each other as separate and distinct employments for gain or profit; and not as parts of or mere adjuncts to some other business. To explain more fully: When a carpenter's shop was introduced into a mill for the mere purpose of repairing and keeping in repair its machinery, and not for other purposes, independent of the mill, it

30

was held to be not within the condition of a policy forbidding carpenters' shops, as among hazardous trades. So of a smithy, introduced into a steamboat for the purpose of keeping in repair its engines or other works, though capable of being carried on as an independent trade, and usually so done elsewhere. But if the smithy should be also used for the purpose of making horse shoes or hobnails as a business, the operation of the policy would thereby become suspended.

" On the other hand, should you find that the manufacturing or grinding of corn meal formed no part of the business of a flouring mill, as contemplated by the parties, then the introduction of a fire kiln into the mill for the purpose of preparing the corn for grinding, to be used in connection therewith, must be regarded as falling under one of that class of hazardous trades denominated as other mills, manufactories, or mechanical operations requiring fire heat; and so not being specified in the policy, the latter would be suspended or become inoperative so long as the kiln was kept in use. In that view of the case, you will have to inquire still further, whether the business of manfacturing this kiln-dried meal, was carried on in the mill at the time when the loss happened. It is in proof (not denied I believe), that this kiln-drying process was conducted in the mill, up to a short time immediately before the fire which occasioned the loss — the defendant claims up to the time. The plaintiff says that the business was suspended on the day previous to the fire, on account of the mill being already overcharged with meal. Should you find that the use of the kiln had been actually discontinued when the loss happened, though but for a day, without any intention of its being immediately resumed, so as that its use from day to day, and from time to time might be regarded as continuous, then the issues arising upon the three pleas referred to, should be found in favor of the plaintiff; otherwise, one or more of them for the defendant.

" It is to be observed that the condition annexed to the policy, in classing hazardous trades, after enumerating several, concludes by saying, ' and other mills, manufactories, or mechanical operation,' etc., drawing a distinction between them. Thus, though a

building may be occupied in three distinct operations, as a mill, as a manufactory, and for mechanical operations, yet the same individual operation cannot be indiscriminately called by either one ; i. e., it must be a mill, a manufactory, or a mechanical operation ; it cannot, at the same time, be all three.

" The three special pleas referred to, differ in this : that the sixth describes the occupancy of the building to be for a kiln-drying meal mill ; the seventh, for a kiln-drying meal manufactory ; and the eighth, for a mechanical operation.

" Unless, therefore, the proof satisfies you, that the building was occupied for all three of these occupations, or trades, you cannot find all three of the pleas in favor of the defendant. If occupied for one or two only, then the plea or pleas, setting forth such occupancy, should be found for the defendant, and the other or others for the plaintiff. Finally, should you find the issues, upon all of the pleas, in favor of the plaintiff, you will assess the damages as already stated."

And the court then gave to the jury the instructions as asked by the counsel for the plaintiff, as aforesaid, and refused to give the second and fifth instructions asked, as aforesaid, by the counsel for the defendant. To the giving of which instructions, as asked by the counsel for the plaintiff, and to the refusal to give the instructions asked by the defendant's counsel, the defendant excepted, and prayed that a bill of exceptions in that behalf might be allowed, which was accordingly done.

And the defendant, after verdict rendered for the plaintiff, moved the court for a new trial, for the following reasons, viz :

1st. That the verdict was contrary to the evidence.

2d. That the verdict was contrary to law.

3d. That the court erred, in charging the jury, in sundry particulars, to be specified when the charge of the judge should be obtained ; which charge was furnished by the judge, and no particulars were specified.

Which motion the judge overruled ; to which opinion and ruling of the court, the defendant excepted, etc.

*Taft & Perry,* and *Kebler & Force,* for plaintiff in error.

*Taft & Perry*, in argument, made the following points, among others :

First.   As to the sufficiency of the second, third, fourth, and fifth pleas :

I.   1. The second plea is good in substance.   It shows a material fact *concealed*, which was unknown to the defendant. What amounts to a *concealment* may be, and is, a question of *fact*. Angel on Fire Insurance 110, 174, 175 ; 8 Howard 235 ; 15 B. Monroe 430, 431.

If material, concealment avoids the policy, though the assured did not intend fraud.   It is a question of fact for the jury.   Angel 152 ; 13 Mass. 61, 68 ; 10 Pick. 535 ; 5 Hill 188 ; 2 Comst. 43 ; 18 Pick. 420 ; 2 Duer 382, 388, 390, 391, 400 ; 9 Barb. 191.

2. But what does this plea lack in form ?

The special demurrer says it is *argumentative*, and by way of *recital*.

But we see neither argument nor recital in it.   The statements are direct, positive, and pertinent.

The special demurrer says that this plea is *uncertain*, in not saying *who intended to use it*, and by *whom* it was used.

But this is surely *certain* to that common intent which is held sufficient for a plea.   The fair construction of the language is that the purpose for which it was there, was to be used by somebody ; that such was the purpose of the owners in putting it there ; and that this was well known to the insured.   Otherwise, how could it be *concealed* by them ?

But it is wholly unnecessary that the plea should say, or show, *who* intended to use it, or *who did* use it.   It was the *use itself* which was material, and that fact was *concealed* by the defendant from the plaintiff.

There is no uncertainty in the description of the kiln-drying corn meal mill.   So far as a description is wanted for this case, we have it, when we know that it is a kiln-dryer and increases the risk.

The plea is not uncertain in alleging the concealment because it does not aver that the insured had knowledge of the fact con-

cealed. To conceal a fact which one does not know, is impossible. Knowledge of the fact concealed, is an essential element of concealment. Whoever, therefore, avers concealment of a fact, avers the knowledge of that fact on the part of the party charged with that concealment, as much as he avers the withholding of that knowledge from him, from whom it is concealed. .

It is said that this plea is *double*, because it alleges that the kiln-drying apparatus was there in the building, and intended for use. Here is but one defense stated, which is, that the insured concealed the fact that there was a kiln-dryer in the mill, intended for use.

Duplicity is as well defined by Mr. Gould as by any one, in his Pleadings 424, sec. 9, and 426, sec. 16; 1 Chitty's Pleadings 532; 1 M. & P. 112; *Currie* v. *Henry*, 2 John. 433; 1 Fairchild 53.

But this special demurrer charges the plea with duplicity, on another ground, viz: that it says the building *contained the kiln-dryer ;* and that *it was used.* Surely this is all one point of defense. How could the kiln-drying corn meal mill be used in the building, if the building did not contain it?

Dismissing, however, this special demurrer, we recur to the substance of the plea, to say again, that whether the fact concealed was material, was a question for the jury, and not for the court to decide. 1 Peters' Rep. 170; 12 John. Rep. 513; 2 Duer on Ins. 689, sec. 31, and note (*a*) 6 Cranch 338. And that the averment of the concealment of a fact, material to the risk, is a good plea.

II. The third plea contains all the elements of a good plea. It avers a false description, and shows wherein it is false. But the demurrer charges that this plea is *uncertain* in the same way with the second. It does not say *who* used the kiln-drying corn meal mill. How can it be essential to a description of the premises to say who used it, or who used a mill in it? It is wholly immaterial, on this point, at least, who used the mill, and whether the plaintiff knew it. The question is, whether the description is true or false. It is not a question of intention, or of knowledge, at all, but of truth.

470    SUPREME COURT OF OHIO.

The Washington Mut. Ins. Co. v. The Mer. & Man. Mut. Ins Co.

The demurrer says, also, that the plea is uncertain, because it does not aver that the building was, " in its *construction*, different from that described by the insured." 1. The description required to be true, is not merely a description of the construction. Its uses form an essential part of the description. 2. But in the plea, it is declared that the apparatus for a kiln-drying corn meal mill was contained in the building, ready for use, and in actual use, which was wholly omitted in the description, though forming the most essential part of any true description. And that the building, instead of being what it was represented, viz., a steam flouring mill, and no more, or other, was actually a kiln-drying corn meal mill ; and so the description given was false.

III.  The fourth plea alleges a breach of the warranty, that the building was, and should be used only for a steam flouring mill.  This plea is founded on the principle, that a description, in the proposition for insurance, which is incorporated in the policy, of the building which contains the property insured, as " a steam flouring mill," is a warranty that the building is, and shall continue to be, occupied only as a flouring mill, during the life of the policy. *Wall* v. *The East River Insurance Company*, 3 Seld. 370, is a case in point.  *Wood* v. *Hartford Fire Ins. Co.*, 13 Conn. Rep. 544, is to the same point.

The demurrer says, this plea is *uncertain*, because it does not say that it was not a steam flouring mill.  The allegation is, that the building should *only be used for a steam flouring mill*.  This, we say, is the fair construction of the policy.  If it be so, then it is enough for us to show by the pleas that the building was used for something else ; and that that something else formed no part of the use contemplated by the policy.  *Who* used it, or with *whose knowledge*, is wholly immaterial, and need not be stated.  The statements of the plea are *direct* and *positive*.

IV.  The fifth plea alleges a breach of the condition against any hazardous trade, business, or vocation, " by carrying on a kiln-drying corn meal mill, without any provision therefor, which is a mill, manufactory, or mechanical operation, requiring fire heat."  This plea adopts the language of the condition in the policy in stating the breach.  6 Wend. Rep. 488 ; *Westfall* v.

*The Hudson River Fire Ins. Company,* 2 Kernan 289 ; *Meade v. N. W. Ins. Company,* 3 Selden 530, is also cited on same subject ; 1 Phillips' Ins. 112, sec. 799 ; 2 Hall's Rep. 589, 632 ; 2 Denio 75 ; 31 Maine 220 ; 13 Com. Rep. 533.

This demurrer objects, that the plea does not show a *trade* carried on. The language of plea is, " was used for a kiln-drying corn meal mill, which is a mill, manufactory, or mechanical operation requiring fire heat ;" following the words of the policy. This is what, in the condition itself, is denominated a trade, etc. It matters not whether it be according to the dictionary, it is according to the policy.

It is objected that the time of the forbidden use of the building is not sufficiently alleged in the plea. But the allegation as to the time, is as broad as the policy.

It is also objected, that the allegation in the plea is in the alternative, declaring that the kiln-drying corn meal mill was " a mill, manufactory, or mechanical operation, requiring fire heat."

The plea alleges in terms, what the thing is, of which we complain. It is a " *kiln-drying corn meal mill,*" and it is a mill, manufactory, or mechanical operation *requiring fire heat.* The thing itself is given without any alternative, or uncertainty, and its character, requiring fire heat, which makes it a violation of the condition of the policy, is given in terms. We suppose that when it is designated and described as a *kiln-drying* corn meal mill, the allegation is sufficient without the other descriptive words, " requiring fire heat." Kiln-drying is equivalent to *fire drying,* or fire heating. Fire is the active element of the concern. Nor does it follow, because these three terms are used in the policy, viz : " mill," " manufactory," or " mechanical operation," that these may not all apply to the same thing. Whether the thing be denominated a mill, a manufactory, or a mechanical operation, if it require fire heat, it violates the condition of the policy. See 2 Arnold on Insurance 1264 ; *Jennings* v. *Chenango Co. Mutual Insurance Company,* 2 Denio 75, is a case bearing directly upon the question of the violation of the condition of the policy by a forbidden trade.

. The case of *Wood* v. *Hartford Fire Ins. Company*, 13 Conn. Rep. 544, may be considered full in our favor on the point of the avoidance of the policy by this kiln, as a breach of the condition against hazardous trades, and also a clear authority to the point, that the description of the premises, in which the property was contained, as a "*flouring mill*," related to the risk, and was a continuing warranty.

Secondly. We insist that the superior court erred in overruling the demurrers to the second and third replications to the eighth plea.

1. This second replication, admitting that the business of kiln-drying corn meal was carried on in the mill, and that it required fire heat, avers that it was " an incident to the business of *flouring mills*." The allegation is not that the business of kiln-drying corn meal, is a *usual* or *known* incident to flouring mills. See *Glenn* v. *Roberts*, 8 Exch. Rep. 607.

2. The third replication asserts, that the " City Mills," under the denomination of a steam flouring mill, instead of what we had a right to expect, had in it a kiln-drying corn meal mill, as a part of it, without any provision for it in the policy.

Thirdly. On the trial, West, a witness, was asked how the kiln-drying corn meal mill affected the risk of fire ? and also whether insurance companies regarded the kiln for drying corn meal as material to the risk of fire ?

The court erred in ruling out these questions. We insist that these questions were competent, as tending to show whether this kiln was an incident, or part, of the said flouring mill. If it made the risk greater than that of a steam flouring mill, it was not fairly to be considered an incident, or even a part, of a flouring mill. Besides, it was competent as bearing upon the question, whether the description in the policy *related to the risk so as to be a warranty;* the object being to show that a steam flouring mill was a different risk from a steam flouring mill with a kiln-drying corn meal mill in it. If so, then the words of the description were a warranty.

The court erred in ruling out· the question asked the witness

Young, as to what was understood among underwriters by the expression, " a steam flouring mill.".

· The same witness was asked by counsel for defendant below, " if in insuring flour mills with a kiln-drying corn meal mill attached, it was customary to have the kiln-drying corn meal mill mentioned in the policy ?" which question was ruled out as irrelevant and incompetent. We suppose this question relevant and competent. It tended to show whether this kiln-drying apparatus was an incident to, or a part of the steam flouring mill.

Fourthly. The court erred in giving the jury the first instruction as asked by the present defendant. Instead of allowing the jury to find the fact, whether or not a flour mill and a corn meal mill were the same, the court, by this instruction, intervened and decided that a corn meal mill was identical with, incident to, or part of a flouring mill.

Or, if it is contended that we do not correctly construe the instruction, and that the words, " are used for grinding grain for food," being added to the words, " flouring mill," enlarge the meaning of that phrase, so that if the jury should find that fact, that finding would include the right " to manufacture corn meal," then the finding of that fact would be to find that the mill referred to in the policy was more than, and different from, a steam flouring mill, as described in the policy ; and it would not warrant the latter part of the instruction, which is, that " the fact that the mill was used for such purpose will not bar the plaintiff from recovering."

The court erred in refusing to give the second charge asked by the present plaintiff. Why should not the jury have been instructed that the policy did not extend to a hazardous business that was not a part or incident of a steam flouring mill, as well as that it did extend to and cover every incident and part of the principal thing described ?

The court erred in refusing to give the fifth instruction asked by the present plaintiff. The instruction asked, was entirely right in laying down the simple rule, that if the kiln was a mill, manufactory or mechanical operation requiring fire heat, and not there by express permission of the defendant, or with its ex-

press authority, that the jury must find for the defendant. It would then be one of the hazardous trades, and so forbidden. The case of *Harris* v. *Columbiana Mutual Ins. Company*, 4 Ohio St. Rep. 285, is cited.

*Coffin & Mitchell*, for defendant in error, made a memorandum for oral argument, from which the following points are taken:

I. *Concealment.*

1. No averment of knowledge on part of plaintiff below. This essential. Concealment is of facts at time of making contract. 2 Arnold 1295; 13 M. and W. 655.

2. No averment that all the facts were different or unusual from all steam flouring mills, etc. No averment of fraud *or design.*

3. The allegation is—not of an existing fact—but of the *use* of the mill—*being used,* etc.

The *use* of the building is secured by the warranty that it shall not be " appropriated, applied, or used," etc., commonly called the suspending clause ; and what is secured by a warranty, need not be disclosed. 1 Arnold, by Perkins, note, 567 ; 20 John. 214 ; 2 Cowen 56.

That the above stipulation is a warranty. 6 Wend. 494 ; 3 Kent 362, 288.

Whether the facts alleged affected the risk, is a question of law, *the facts being stated.* 18 Pick. 421 ; 24 Ib. 84, 85 ; 3 Barb. 576.

II. *Misdescription.*

1. The plea does not deny the truth of the description, but avers it was all it was described, but *used* for a kiln-drying corn meal mill.

The *use* of the mill for any other purpose than a flouring mill, is prohibited by another clause.

The description was true—the use formed no part of the description.

2. There is no allegation that the kiln-drying apparatus was not a part of, or an incident to a flouring mill.

3. No allegation that the use had anything to do with the premium or risk.

4. The use is secured under the *special warranty* as to the use. 1 Arnold 567, note.

5. No allegation of knowledge on part of plaintiff. 2 Arnold 1295, article *Misrepresentation*.

III. *Warranty.*

1. Description not ·a warranty.

2. If a warranty, it is only " that it is now and shall continue a steam flouring mill."

It is not denied but that that warranty was kept—no breach of such a warranty alleged.

The warranty claimed, is, that it should *only* be *used* for a steam flouring mill. It was not intended as a warranty, as claimed. The other clause was intended to warrant *the use ;* and by that clause every other use, excepting the specific ones excepted, is authorized by *the terms* of the agreement. It is not left to inference, or to implication of law, but *so agreed* by the *terms* of the contract. 6 Wend. 627 ; 1 Sumner 444 ; 1 Hall 235 ; 11 John. 122.

3. The breach is—of *a use.* 1 Arnold 567, note.

IV. *Breach of warranty as to use.*

This was an attempt to present the real defense.

The plea is defective.

1. It is " *a trade, business,* or *vocation,*" that is prohibited. It is to be " *carried on, or exercised therein.*" This plea makes no such allegations.

2. It avers that the building *was used* for a kiln-drying corn meal mill, which (what, *the use ?*) is a mill, etc. It might have been used half a dozen times, and yet no trade, business or vocation prohibited, carried on or exercised therein. It requires a direct and positive allegation of these things, to bring it within the case of *Harris* v. *Col. Mut. Ins. Co.,* 4 Ohio St. Rep. 285. The plea may be true, and yet no defense.

3. The plea alleges that this use was a mill, manufactory, *or* mechanical operation, etc., *in the disjunctive* or alternative. 3 M. and S. 114 ; 1 B. and P. 413 ; 1 Chitty's Pl. 236, 237 ;

Stephen 387; 1 Handy 48–51.   It was necessary to aver the use which was prohibited : *Mills* not prohibited ; kilns not prohibited —hence necessary to aver that the kiln was something named in the list prohibited.

As to demurrers to second and third replications to eighth plea.   Case of *Glen* v. *Lewis*, 8 Exch., is to be found in 20 Eng. Law and Eq. Reps. 364, and an examination of the case will show that it sustains our views, rather than those of Mr. Taft.

As to the rulings and charges of the judge :

How this court is to review these, I cannot comprehend.   No evidence on the points ruled, or instructions refused or given, is set out.

To determine whether a court has given erroneous instructions, the evidence must be set out on the points to which the instructions apply.   6 Miss. 253; 8 Ib. 617; 4 W. & S. 570; 2 Humph. 140.

And the *facts* must show, affirmatively, the error complained of.   18 Ohio Rep. 28; 17 Ib. 440 ; 15 Ib. 156 ; 16 Ib. 518.

The bill of exceptions must show that the error complained of was material.   14 Ohio Rep. 38, 473.

As to the ruling of the judge, on the trial of the issues, see 27 Eng. C. Law 207 ; 22 Ib. 444; 3 Ib. 105 ; 7 Wend. 78 ; 1 Hall 228, 229, 232.

As to the charges asked and refused.   Second charge properly refused as a whole.   *Inglebright* v. *Hammond*, 19 Ohio Rep. 337 ; *French* v. *Millard*, 2 Ohio St. Rep. 45.

BARTLEY, C. J.

The main question on the merits of this case, in the court below, was, whether *a kiln-drying corn meal mill* was an ordinary incident to, or a known or usual appendage of, a mill coming under the denomination of a " *steam flouring mill ;* " and this was a question of fact for the determination of the jury, under proper instructions from the court.   The policy upon which the plaintiff below declared, was a reinsurance for six months, against loss or damage by fire, to the amount of $4,000, on $8,000, as insured by plaintiff below to D. White & Co., on " *stock of flour, grain,*

*and cooperage,* contained *in their stone and brick steam flouring mill,* with cement roof, and detached from other buildings, situate in the city of Madison, Indiana, and known as *the ' City Mills.' "* The policy contained an express condition, in the words following:

" And it is agreed and declared to be the true intent and meaning of the parties hereto, that in case the above mentioned buildings, or any part thereof, shall hereafter be appropriated, applied, or used to or for the purpose of carrying on or exercising therein any trade, business, or vocation denominated hazardous in the conditions annexed to this policy, or for the purpose of storing therein any of the articles, goods, or merchandise, in the conditions aforesaid denominated hazardous, unless herein otherwise especially provided for, or hereafter agreed to by said company, and indorsed upon this policy, then and from thenceforth, so long as the same shall be so appropriated, applied, or used, these presents shall cease, and be of no force or effect."

The conditions of insurance, and classes of hazards referred to in the body of the policy, contain the following:

" The following trades, goods, wares, and merchandise, are denominated hazardous: Apothecaries and druggists, book-sellers' stock, book binders, bakers, brewers, boarding houses, brass, iron, and type founders, confectioners, chair makers, manufacturers or sellers of camphene, or spirit gas, cabinet makers, chemists, colleges, china, glass, and earthen ware, carpenters in their shops, or in buildings erecting or altering, distilleries, gunpowder, hatters, painters' shops, and paint grinding, paint stores, rectifiers of liquor. school houses, spirits of turpentine, soap makers, Spanish moss stables, sulphuric acid, smoke houses, ship chandlers, tallow and lard renderers, theatres, hay, straw, fodder, and corn husks, hemp and flax, lime unslaked, printers, tallow chandlers, taverns, coffee houses, and restaurants, varnish, upholsterers, grist mills, fulling mills, saw mills, paper mills, and other mills, manufactories or mechanical operations requiring fire heat, or in which wood, chips, or shavings are made."

The policy took effect on the 26th day of October, 1847 ; and on the 28th day of March, 1848, the property insured, together with the said flouring mill, was destroyed by fire. And it appears, that, at the time of the insurance, the said flouring mill contained *a corn meal mill,* and *a kiln-drying corn meal apparatus, requiring fire heat,* and that the same were used in said flouring mill until, or near, the time when the establishment was burned down.

It was claimed, on the part of the defendant in the court below, that the kiln-drying corn meal mill, which necessarily increased the risk, did not constitute an ordinary incident to, or usual and appropriate appendage of, a flouring mill, and that, therefore, not being included by the descriptive expression, "*flouring mill*," contained in the policy, the use of such mechanical apparatus in the mill, was in violation of the conditions of the policy, and wholly avoided it, or, at least, suspended its operation. On the other hand, it was claimed by the plaintiff below, that the kiln-drying corn meal mill was an incident to, and an appropriate part of the flouring mill, or, at least, that its use, not being an independent and distinct trade or business, was not a violation of the conditions of the policy. And this constituted the naked issue between the parties *on the merits* of the case. And, in order to present this simple issue of fact in legal form for determination, the parties have gone into much abstruse refinement in pleading through a multiplicity of special pleas and special demurrers, and have been followed by the court below into such learned and critical philological niceties of discrimination, that the record in the case constitutes truly an interesting legal curiosity to those who have a taste for the most sublimated abstractions of special pleading. We have not deemed it necessary for the purposes of this case, nor profitable in the appropriation of our time, to decide all the various questions of special pleading presented by the record.

The defense in the court below, was first presented under the various aspect of five several special pleas, to wit: 1st, plea of concealment; 2d, of misdescription; 3d, of breach of implied warranty; and 4th, of breach of express conditions in the policy. To these several special pleas, the plaintiff demurred generally and specially. In the demurrer to the plea of concealment, besides sundry grounds of *duplicity*, no less than four several grounds of *uncertainty* are assigned on special demurrer, the most material of which is, that the plea does not expressly aver knowledge in the plaintiff at the time. Now, a late elementary writer of high character, on "Fire and Life Insurance," touching this subject of the defense of concealment, says :

" All the authorities concerning matters of insurance, concur in the position that, if the concealment is *material*, it will avoid the policy, notwithstanding the assured did not intend to commit any fraud. The *suppressio veri* may happen by mistake, and be entirely without fraudulent intention ; still the underwriter is deceived, and the policy is thus void, for the reason that the risk run is really different from the risk understood and intended to be run, at the time of the agreement. A concealment, which is only the effect of *accident, inadvertence* or *mistake*, is equally fatal to the contract as if it were designed. By a *material* fact is meant one which, if communicated to the underwriter, would induce him either to decline an insurance altogether, or not to accept it unless at a higher premium. If a party, for instance, with knowledge that his agent is in treaty for insurance, receives information of a material fact, he is bound promptly to use the means of communicating it, and his neglect thus to do will avoid the policy, independently of any proof of bad motives for the delay. The question of materiality in regard to concealment, as in the case of representation, is ordinarily considered proper to be left to the jury. ' The question,' says a very learned writer, ' whether the facts concealed were or were not material to the risk, is mainly a question for the jury.' "

In the making of a contract for insurance, the parties are held to the utmost good faith ; the assured is presumed to know the condition of the property, and the dangers attending it ; and is not at liberty to withhold information on an important and material matter known to increase the risk. And a concealment set up as a defense to an action on a policy of insurance, imports within itself the knowledge essential to this ground of defense.

The counsel for the defendant in error is clearly mistaken in supposing that the doctrine of concealment is confined to cases of marine insurance, and no part of the law applicable to insurances against fire. It is very true, that on account of the difference in the circumstances attending these two classes of insurances, a strictness and nicety has been required in questions arising on policies of marine insurance, not deemed applicable to policies of fire insurance ; but so far as the *principle* is concerned, as between marine and fire policies of insurances, in regard to concealment, there is no difference ; the question in each instance being that of good faith, which forbids an improper and unjustifiable want of disclosure.

I do not propose, however, to enter into an examination of the technical sufficiency of this, or either of the other special pleas to which demurrers have been sustained ; but will pass them with

the single remark, that it is not easy to perceive, at least, how some of the rulings of the court below as to the demurrers to these pleas, can be sustained. But we have not deemed it necessary, for the purposes of this case, to determine these questions of pleading, inasmuch as the true issue of fact has been presented by the subsequent pleadings in the case, as it arises on the express conditions in the policy of insurance.

It is expressly provided in the policy, that the buildings mentioned as containing the property insured, should not be used in any way, for the purposes of carrying on or exercising therein any *trade, business,* or *vocation,* denominated hazardous in the conditions annexed to the policy; among which, are " *grist mills and other mills, manufactories, or mechanical operations requiring fire heat.*" Now, the kiln-drying corn meal mill would, most manifestly, fall within the terms of this condition of the policy, if not covered by the policy, as an incidental part of the flouring mill therein mentioned; and whether this was the case or not, was *the issue of fact* for determination. The term grist mill is a general term, comprehending all kinds of mills for grinding grain for food. A corn meal mill belongs to a particular class of grist mills, the use of which may be a distinct business of itself; and if the kiln-drying corn meal apparatus be not an invariable and essential part of a corn meal mill, the latter may, or may not, have that appendage. Now, if the kiln-drying corn meal mill did not constitute a known or usual and appropriate part of, and incident to a steam flouring mill, the use of it in the buildings of the steam flouring mill in question, being a hazardous business, carried on by a mechanical operation requiring fire heat, was in violation of the conditions of the policy. The issue, therefore, presented two facts, which it became necessary for the court to submit to the jury: first, whether the grinding of corn meal was a usual and appropriate part of, or incident to, the business of a steam flouring mill; and if so, secondly, whether the kiln-drying corn meal operation was also a usual and appropriate incident to the business of such a steam flouring mill. And these two questions should have been properly and fairly submitted to the jury, and left for their determination. In the opinion of the majority

of this court, that was not done by the court below. The busi-
ness of manufacturing kiln-dried corn meal consisted of two dis-
tinct operations : one being the grinding the corn into meal, and
the other being the kiln-drying, either the corn before the grind-
ing, or the meal after the grinding, (and which it was in this
instance, is not shown by the record.)   And it was the kiln-dry-
ing operation, rather than the simple grinding the corn, which
most materially increased the risk, and, therefore, constituted the
chief ground of complaint on the part of the defendant in the
court below.   Now, although the court did, *in a manner*, leave
to the jury the question whether the business of grinding corn
was included in the appropriate business of the flouring mill, yet
the main question, whether the *kiln-drying operation* was included
also, the court did not submit to the jury at all, but decided that
question itself.   The language of the charge on this subject, is
as follows :

"It will be observed that the subject of the insurance is a 'stock of flour,
grain, and cooperage, etc., contained in a steam flouring mill.'   The word
grain, comprehends wheat, corn, rye; buckwheat, barley, and other farinace-
ous grains.   When stored in a mill, it is presumed to be there for the purpose
of being ground, unless the contrary appears.   If corn and rye, as well as
wheat, were stored in this mill at the time of the loss, would they fall within
the protection of the word grain?   If they would, then for what purpose were
they expected to be placed in the mill?   If for the purpose of being ground
into flour or meal, the use of the mill for such purpose was contemplated by
the parties.   These, however, are matters for your own determination.   Should
you be satisfied, upon examination, that the words. 'flour mill,' were used to
signify a mill for the grinding of grain generally, and that the parties con-
templated the building in question would be used during the continuance of
the insurance for the grinding of corn and other grains, as well as wheat, then
the putting up or using of any apparatus or machinery in connection there-
with for the purpose of facilitating the operation merely, and not as an inde-
pendent trade, within the class of hazardous trades, etc., set forth in the con-
ditions of the policy, even though fire heat was used therefor, and the hazard
actually increased thereby, it would not suspend the operation of the policy,
according to the clause above referred to, (i. e., under the pleadings in the
case.)"

This charge is not qualified or changed in any other part of
the instructions to the jury.   Now, the question whether the use
of a fire kiln in a mill for the purpose of drying the corn or the

meal, was a usual and appropriate part, or ordinary incident to a flouring mill, was the main question, and that was not left to the determination of the jury at all. The question which the jury were instructed to find, was, whether the words " flouring mill " were used to signify a mill for the grinding of grain generally, and therefore included the business of grinding corn. And it is not going too far to say, that even this was not fairly and properly left to the jury, for the reason that the court first stated circumstances argumentatively, and after plainly and distinctly indicating to the jury the conclusion of the court as to the fact, said : " These, however, are matters for your own determination." A court, in charging a jury, may very properly call the attention of the jury to the evidence, in order to show the application of the law governing the case, or the legal purpose and effect of the testimony; but the statement of the evidence by the court argumentatively, so as to give the jury the manifest conclusion of the court as to the fact submitted to their determination, is uniformly condemned as improper.

Again, it is insisted that the court erred in refusing to give to the jury the second and fifth instructions, asked by the counsel for the defendant, which were as follows :

" 2. Under the issues made, if the jury find that a kiln-drying corn meal apparatus was not a part of a steam flouring mill in the ordinary acceptation of the words, or as these words are used by underwriters, or an incident to the business of manufacturing flour, the verdict must be for the defendant.

" 5. If the jury find that the kiln-drying corn meal apparatus was either a mill, manufactory, or mechanical operation requiring fire heat, and not there by the express permission of the defendant, or with defendant's express authority, they must find for the defendant."

The questions presented by these instructions, properly arose under the issue in the case. The fifth instruction follows almost the language of the policy. And in our opinion, this ruling of the court below, cannot be sustained upon any principle of law applicable to this case.

It is also alleged, that the court erred in giving to the jury the instructions asked for by the counsel for the plaintiff below, which were as follows :

" 1. That if the jury should find that the mill referred to in the policy was a flouring mill, and used for grinding grain for food, the policy in question authorized D. White & Co. to manufacture corn meal, in the building described in the policy, and the fact that the mill was used for that purpose, at the time of the loss, will not bar the plaintiff from recovering.

" 2. That *an incident* to a trade like the business of manufacturing flour or meal for food, *is that which does not necessarily belong to it*, but which *may happen to it;* and if the jury should find as above charged, and that the drying of corn by a kiln was deemed an improvement in the manufacture of meal for a foreign or domestic market, and it was a part of the process of manufacturing corn meal for a foreign or domestic market, then D. White & Co. had a right to use a kiln for that purpose, and the fact that they had such a kiln with fire heat, in use at the time of the loss, is no bar to the plaintiff's right to recover."

It is certainly difficult to perceive how these instructions can be sustained. A flouring mill, in its most restricted sense, is, to say the least, a mill used for grinding one kind of grain for food, to wit, wheat. The first instruction here given, does not make any qualification by specifying the grinding of grain of different kinds, or grain generally, for food, but simply that of *grinding grain for food.* Now, a flouring mill, if it grind nothing but wheat, is still a mill used for grinding grain for food. So that the jury were instructed, that, if they found that the mill referred to in the policy, was a flouring mill used for grinding grain for food, the policy authorized the manufacture of corn meal in it; and, therefore, could not defeat the plaintiff's recovery. This is the plain and natural meaning of the language of the charge.

In the second instruction asked by the plaintiff below, and given to the jury, " *an incident* to a trade, like the business of manufacturing flour or meal for food," is defined as synonymous with *accident.* And the jury were instructed, that if the introduction of a fire kiln into a flouring mill for the drying of corn, was deemed (it is not said by whom, whether by the mill own ers, the public generally, or by the jury,) an improvement in the manufacture of meal for a foreign or domestic market, and was a part of the process of such manufacture, that then the owners of this flouring mill had a right, under the policy, to use such kiln in the mill, with fire heat. This complicates a very simple matter of fact with a proposition compounded of distinct consid-

erations, not conducing by any necessary dependency upon each other, to the conclusion sought. One consideration is the finding that the use of this fire kiln for drying corn is a part of the process, (not any particular process, but of course the ordinary process,) of manufacturing corn meal for a foreign or domestic market; and another is the finding that this operation was an improvement in such manufacture. Then these two distinct matters being both found, inasmuch as an incident of any particular trade is that which does not necessarily belong to such trade, but that which may happen to it, the conclusion was, according to the instructions, that the use of this corn drying apparatus with fire heat was authorized by this policy. Such instructions were calculated both to confuse and to mislead the jury.

But it is urged, that no injury could have accrued to the plaintiff in error, by the charge of the court below, for the reason, as it is said, that under the state of the pleading in the case, the defense was unavailable, inasmuch as the term " trades," used in the conditions annexed to the policy, is intended to signify those occupations or branches of business which are wholly separate, distinct and independent of each other, and not such as are mere parts of, or adjuncts to, some other business. The term " *trades* " is manifestly used, in the second specification in the conditions annexed to the policy, in a very enlarged sense. And there is nothing in the specifications requiring that the various branches of business and mechanical operations enumerated, be such only as are wholly separate, distinct from, and independent of, the business authorized in the buildings mentioned in the policy. Numerous distinct trades or branches of business may be often carried on in the same building, and in connection with, and even auxiliary to, each other. Because one kind of manufacturing business has been authorized in buildings covered by a policy of insurance, can any other kind of manufacturing or mechanical operation be introduced into the same building, greatly increasing the risk, without the consent of the underwriter, providing it can be carried on in some kind of connection with the former? Suppose that, inasmuch as the flouring mill in question required for its business a large supply of flour barrels, an exten-

sive cooper shop, with all its mechanical operations requiring fire heat, and making chips and shavings, had been introduced into the building, making two or three hundred barrels per day for the purposes of the mill, could the change in the risk have been thus made, without vitiating the policy, because of its connection with the business of the mill ? If this were so, underwriters could make but little calculation on the risks they run. The business of kiln-drying corn, and manufacturing corn meal therefrom, if carried on in the same building with a wheat flouring mill, could not be connected as an auxiliary with the manufacture of wheat flour. And mere connection with the same propelling power would certainly not be sufficient. It would hardly be claimed by any one, that a manufactory of fire-works—a business extra hazardous, and for which the highest scale of premium would be requisite—could have been carried on in this flouring mill, because connected with the same propelling power, and thus used in conjunction with the flour mill, without affecting the policy.

The general principles which govern ordinary contracts, cannot be inapplicable to contracts of insurance. " The construction and use of the premises insured, as described in the policy, constitute the basis of the insurance on the conditions expressed, and determine the amount of the premium. But this calculation can only be made upon the supposition, that the description in the policy is substantially true, and shall remain so while the risk is running, and that no alteration be subsequently made to enhance the liability of the insurer." 26 Eng. L. and Eq. Rep. 244.

This is in accordance with the most recent adjudicated cases. In *Wall et al.* v. *The East River Mutual Insurance Company*, 3 Seld. Rep. 370, where a policy covering a rope maker's stock, described it as " contained in a brick building, with tin roof, occupied as a store house, and about forty-two feet from the rope-walk," etc., it appearing that a part of the building was used for *hackling hemp and spinning it into rope yarns*, it was *held*, that the description contained in the policy was a warranty, and that such occupation was a breach which avoided the policy.

The case of *Jennings* v. *Chenango County Mutual Insurance Company*, 2 Denio 75, is more strictly analogous to the case

before us, where the conditions of a policy required the application to state for what purpose the insured property was occupied, and in the application it was only called a *grist mill*, and it was proven that carpenter's work was accustomed to be done in it at times, although in part for the repairs of the mill, with tools and implements permanently kept therein.   There it was held by the court, that the policy was vitiated.

This view of the case before us is also strengthened by the cases of *Westfall* v. *The Hudson River Fire Insurance Company*, 2 Kernan's Rep. 290 ; *Mead* v. *The Northwestern Insurance Co.*, 3 Seld. Rep. 531 ; *Glenn* v. *Lewis*, 8 Exch. Rep. 607 ; and *Sillem* v. *Thornton*, 26 Eng. L. & Eq. Rep. 238 ; and more especially the analogy of the recent case of *Harris* v. *The Columbiana Insurance Company*, 4 Ohio St. Rep. 286.

Some of the difficulty in this case appears to have arisen from confusion as to the distinction between the terms *flouring mill* and *grist mill*.   At this late day there should be no uncertainty as to the distinctive signification of these words of common use. Flour is the product from grain, both ground and bolted ; while meal is the pulverized grain ground but unbolted.   The making of flour, therefore, consists in both grinding the grain and bolting the meal ; while the making of meal consists in the simple process of grinding.   The grinding or grist mill, therefore, is an essential part of all flouring mills, while the bolting apparatus is not an indispensable part of a grist mill.   But it will not be controverted that the bolting apparatus is an ordinary appendage or usual incident to grist mills.   But whether it is a part of the known or usual business of a mill denominated a flouring mill, to manufacture meal without bolting it, or, in other words, to do the business of the grinding of grain without flouring it, is one of the questions of fact presented in this case.   And in case it be found that the business of making meal or unbolted flour, is a usual part of the business of a flouring mill, it still remains to be found whether a fire kiln for drying corn in the manufacture of corn meal is an ordinary or usual part of a flouring mill.   For if it be so, the underwriter, in taking the contract of insurance, takes the risk ; but if it be not, he cannot be burdened with a risk, which

could not be fairly presumed to have been in the contemplation of the parties at the time.

But it is said, that this kiln-drying apparatus was a modern improvement in the manufacture of corn meal, and as such, being connected with the process of manufacturing corn meal, was not in violation of the conditions of the policy covering a flouring mill. It may be a matter of public policy falling within the province of the legislative power, to favor improvements in the mechanical arts; but it is certainly no part of the duty of the judiciary to enter into such considerations, in the enforcement of the contract-obligations of parties. If a new improvement in machinery, materially increasing the risk of the insurer, be introduced, which is not a known or ordinary incident of the business of the establishment insured, the fact must be made known to the insurer, and receive his consent, in order to save the policy. The underwriter may be presumed to have in contemplation the incidents and casualties of a business under the usual or ordinary appendages and mechanical operations of a manufacturing establishment, but when new inventions in mechanical operations not in common use, are introduced, greatly increasing the risk, on account of which the underwriter would either not undertake the insurance at all, or do so only on the terms of an increased premium, good faith and common honesty require that he be apprised of the change. And if such new invention be in the establishment at the time of the insurance, but not communicated or made known, the insured will not be authorized by the policy to use it, and his subsequent use of it, will have the same effect on the policy as the subsequent unauthorized introduction of it. This is required by good faith and fair dealing, and in accordance with the ordinary principles governing contracts.

There has been some conflict in the adjudications, and much controversy about the principles, both in England and in this country, in relation to changes in the premises, or changes in the business, connected with the property insured, or the occasional uses of the property, or introduction of a business into the same, either not within the contemplation of the policy, or in violation of its express conditions. The principles of these cases, however,

do not appear to be involved in the case before us. If the business of manufacturing corn meal, and of kiln-drying corn for that purpose, did not constitute a part of the appropriate or known business of a steam flouring mill, it could not have been used as a business in this mill without affecting the policy; and if kept there for use, whether used *constantly*, or only *occasionally*, it either suspended or vitiated the policy.

There are some other questions in this case, arising upon the admissibility of evidence and in other respects, which we do not deem it important to determine.

Judgment of the superior court of Cincinnati reversed, and cause remanded for further proceedings.