Johnson, J.
The agreement, which is the foundation of the action, is, we think, properly pleaded, as a contract, securing to the plaintiff in error “ the sole privilege of mining fire clay ” on the land for a term of three years.
The agreement itself, is not a lease of the land, but of “ all the clay that is good No. 1 fire clay,” on the land.. If that kind of clay was on the land, the plaintiff in error was bound to mine not less than 2,000 tons each year, the same to be paid for monthly as it was taken away. The exclusive right to possession of the land so far as was necessary to mine and remove such clay was granted. This was not an exclusive possession of the whole tract, but only for • mining purposes. The ownership of the land, with the right to the possession of the same, subject only to the right of possession for the purpose of mining and removing the clay, was in the owner. *72 This was, therefore, a contract for the privilege of mining and removing the kind of fire clay specified, as distinguished from a lease of the land.
This right or privilege commenced February 25, 1873, and unless sooner terminated, ended February 25, 1876.
The action is for three years’ rent, or compensation to be paid on failure to mine, and not for so much clay actually mined. It is founded on that clause of the agreement which provides, that the plaintiff in error, ‘ ‘ shall mine or cause .to be mined, or pa/y for, not less them two thousand tons of c],ay every year, and shall pay therefor twenty-five cents per ton for every ton of clay monthly as it is taken away.”
The petition does not aver, that any particular quantity of clay was taken away.
It is alleged that possession of “ said clay lands,” was taken, and “ large quantities of fire clay mined and taken away, but not to exceed 6,000 tons.
As this was not a lease of the land at an agreed rent per annum, but a contract, for the exclusive privilege of mining and removing during the term, “all the clay that is good No. 1 fire clay,” it follows, we think, that unless there was such clay on the land, nothing was payable under the contract.
The clause of the contract, termed therein a condition, which binds the party of the second part, to mine or cause to be mined or pay for, not less than 2,000 tons of clay every year, is not an obligation to mine or pay for any. other clay, than that leased to the party. The word “ clay ” in this clause means the kind of clay contracted for, viz., “ good No. 1 fire clay.”
The defendant bound itself, in consideration of the privilege granted, to mine and pay for this kind of clay, at the rate spe-cified, payable monthly as it is taken away. It was to mine, or pay for, at least 2,000 per year.
It could not monopolize this clay for three years, without compensation, nor take a less amount than two thousand tons per year, but was to mine at least that amount. If it did not, it was to pay for that amount each year. If it failed to mine this quantity each year, it obligated itself to pay for that amount, *73 To'hold, that the plaintiff below was entitled to an annual rent of $500 per year, if there was no clay of the quality, or in quantity sufficient, that was minable, would do violence to the terms of the agreement and to principles of justice. It would be paying for a worthless privilege.
I. Did the court err in its charge, as to the burden of proof %
The original petition did not allege that there was any good No. 1 fire clay on the land. For want of such an averment, a demurrer was sustained, and an amendment was made, containing this allegation. It was put in issue by the first defense. The issue thus tendered naturally cast the burden on plaintiff, if determined by the form of the pleadings merely.
On the trial the general charge was that the burden on this issue was on defendant, but theffirst request of defendant was given, which was to the effect that the plaintiff must satisfy the jury, by a preponderance of proof, that such clay was on the land in minable quantity.
Without attempting to harmonize these different rulings, let us assume, that the plaintiff in error is correct in saying the effect of the charge was to east the burden on defendant.
Upon general principles applicable to cases of this kind, and in accordance with the opinion in Cook v. Andrews, 36 Ohio St. 178, we think the burden was properly on defendant.
It is admitted in the pleadings, that possession of these clay lands was taken by defendant under the contract. This was an exclusive possession for all purposes embraced in the contract, and included the right to test the lands for such clay, if such test was necessary.
From the bill of exceptions, it appears to have been an open question, whether there was such clay to be found. It was the duty of defendant to mine and remove the same, if found, or pay the amount stipulated per year.
The exclusive right to test these lands being in the defendant, the burden is on him to prove the non-existence of such clay in minable quality and quantity. Cook v. Andrews, supra.
II. The court charged, that if there was good No. 1 fire *74 clay on the land in such quantities as would justify mining -it, the jury need not inquire further, but must find for the plaintiff. That is, if the clay was there, of the quality and quantity that should have been mined and taken away, the defendant must pay for at least 6,000 tons, whether mined and removed or not. In this we think there was no error. They were, however, further charged, that if such clay was not on the land, it did not follow that the issues should be found for the defendant, but the jury must inquire further. '
In this further inquiry, they were instructed: 1st. That it was the duty of defendant, to test the land in a reasonable time for such clay. 2d. If it did not do so in one year, sufficiently to determine its quantity and quality, and continued mining and taking away “ clay,” during the second year, then it became liable at the end of the ypr for 2,000 tons, whether it received that amount of clay or not; and, 3d. If, during the second year, it mined and took away “ clay ” under the lease, and did not abandon the lease before the commencement of the third year, it was liable to pay for 2,000 tons for that year, whether it t§ok away that quantity or not.
The plain import of these instructions were, that although there was no such clay on the land as defendant had contracted for, yet if the defendant failed to make a test during the first year and held over into the second year, mining and taking away clay (whether of the quality contracted for is not stated), the defendant was liable to pay for 2,000 tons for that year, whether there was any good No. 1 jure clay there or not, and the same rule was given to guide the jury for the second and third years.
Notwithstanding this, the court, at the request of defendant, charged, that before the plaintiff could recover, the jury must be satisfied by a preponderance of evidence, that there was upon said lands, good No. 1 fire clay, in such quantities as would justify its being taken out; but at the same time and in the same connection, refused to give the following charge, without omitting therefrom the words, “ nor is he required to pay for the same if he should refuse to take it,” and gave said instruction omitting said words:
*75 “ If the jury shall find, from the evidence, that there was to be found on the lands of the plaintiff some good No. 1 fire clay, but that the same was found in such small quantities, or was so mixed up with other fire clay unfit for use, or other ingredients that rendered it unfit for use as a good No. 1 fire clay, that it could not be taken out and made fit for use except at an expense exceeding the value of the clay so obtained, and would not, for that reason, have been mined by any man of ordinary care and prudence in that business, the defendant was not required to take such fire clay as a good No. 1 fire clay, nor is he required to y>a/y for the same, if he should refuse to take it.”
That is, if- there was no No. 1 fire clay of sufficient quantity, that could be taken out and made fit for use, except at such great expense as would not justify a man of ordinary care and prudence in that business in doing it, the defendant, though not required to mine it, is yet bound to pay for it, if taken out, though not of the quality contracted for.
This modification of the request is irreconcilable with the prior request of the defendant, which was given, but is in harmony with the main charge of the court, which we have found to be erroneous, in holding defendant liable, during his possession, and while searching for the kind of clay he had contracted for, although none was on the land. In view of the fact that the jury rendered a verdict for the full quantity of the kind of clay that defendant was bound to take out, if there in minable quantity, for the whole term, and of the fact that the evidence put in issue the existence of such clay, we think this judgment should be reversed. It was likely to confuse and mislead the jury upon the most important issue in the case. Eor this reason alone the judgment should be reversed. Wash. Ins. Co. v. Mer. & Man. Ins. Co., 5 Ohio St. 450.
By the charge of the court, and by the modification of the second request of defendant, this issue became immaterial, if there was any quantity of the required kind of the clay, however small, on the land, or indeed, if none at all.

Judgment r&oersed a/nd ccmse remanded.