OHIO FAIR PLAN UNDERWRITING ASSOCIATION, APPELLEE, *v.* REESE, APPELLANT.

(No. 47441—Decided May 28, 1984.)

*Ulmer, Berne, Laronge, Glickman & Curtis, Ronald H. Isroff* and *Jeffrey A. Summers,* for appellee.

*Louis S. Nyerges,* for appellant.

PARRINO, J. Defendant-appellant, Claybourne Reese, appeals from the judgment in the court of common pleas which declared the policy of fire insurance issued by plaintiff-appellee, the Ohio Fair Plan Underwriting Association (hereinafter "Ohio Fair Plan"), void.

The basic facts of the case are undisputed. Reese was the owner of a multi-family building located on the corner of East 55th and Payne Avenue in Cleveland. Ohio Fair Plan is an entity created by the Ohio Legislature to assure the availability of property insurance for property that is not insurable in the normal insurance market. R.C. 3929.41 *et seq.* Reese obtained a policy of insurance from Ohio Fair Plan which held an expiration date of May 22, 1982. On May 7, 1982 he suffered a fire loss for which his claim of $3,973.60 was paid by Ohio Fair Plan.

On April 5, 1982 Reese completed an application and certification for a replacement policy to run from May 22, 1982 to May 22, 1983 and forwarded the premium payment to Ohio Fair Plan. A replacement policy of insurance was issued and is the policy at issue. At the time of the replacement application,

there was due $800 in delinquent taxes on the subject property.

Reese's property suffered a fire loss on September 7, 1982 for which he submitted a claim. The damage exceeded the $40,000 policy limit so claim was made for the policy limit. On December 8, 1982 Ohio Fair Plan wrote to Reese stating that his policy was void and returned his premium payment. The complaint in the instant action for declaratory relief was filed the same day.

A trial was had before the court. The court found in favor of Ohio Fair Plan and, upon Reese's request, filed findings of fact and conclusions of law. Reese appeals assigning five errors for our review.[1]

"I. The trial court erred in finding that Ohio Revised Code 3929.44[E] is constitutional which Act could be fully reconciled with the Constitution — even though the statute is so vague and unreasonable and * * * there were no guidelines, definitions or purposes for such legislation, and * * * the Act [R.C.] 3929.44[E] defeats the purposes of insurability as set forth in [R.C.] 3929.44 paragraph[s] A, * * * B and C of the Ohio Revised Code."

This assigned error is not well-taken.

R.C. 3929.41 to 3929.49 are specific statutory enactments to provide for a means of insurance for urban property where basic property insurance cannot be obtained through the normal insurance market. These provisions have no application to ordinary insurance carriers.

R.C. 3929.44 provides:

"(A) Any person having an insurable interest in real property or tangible personal property, or both, at a fixed location in an urban area, who has been

unable to obtain basic property insurance or homeowners insurance, shall be granted, upon application to the Ohio fair plan underwriting association, an inspection of the property by representatives of the inspection bureau.

"(B) Promptly after the request for inspection is received, an inspection shall be made. An inspection report shall be made available to the applicant upon request.

"(C) The association, if it finds that the inspection report shows the property to be insurable by meeting the reasonable underwriting standards contained in the plan of operation approved by the superintendent of insurance, shall cause a policy or binder of basic property insurance or, at the option of the applicant, homeowners insurance, to be issued to the applicant upon payment of the premium.

"(D) As part of an application for a policy of basic property insurance or homeowners insurance, an applicant shall, in accordance with procedures and requirements set forth in rules promulgated by the superintendent, certify at least two insurance companies that had been contacted and from whom coverage was not available.

"(E) *As a condition of the issuance of a binder or policy of basic property insurance* or homeowners insurance, *an applicant shall,* in accordance with procedures and requirements set forth in rules promulgated by the superintendent, *certify to the association that there are no outstanding taxes,* assessments, penalties, or charges *with respect to the property to be insured.*" (Emphasis added.)

Reese argues that subsection (E) is unconstitutionally vague. We disagree and find that the trial court properly found the statute enforceable.

A complaining party has the burden of proving a lawfully enacted statute to be in conflict with the Ohio or United States Constitutions. As stated by the

---

[1] The issues raised and arguments made in the supplemental brief are not addressed as such brief was not timely filed.

Ohio Supreme Court in *Ohio Public Interest Action Group, Inc.* v. *Pub. Util. Comm.* (1975), 43 Ohio St. 2d 175 [72 O.O.2d 98], at paragraph four of the syllabus:

"The question of the constitutionality of every law being first determined by the General Assembly, every presumption is in favor of its constitutionality, and it must clearly appear that the law is in direct conflict with inhibitions of the Constitution before a court will declare it unconstitutional. *(State Board of Health* v. *Greenville,* 86 Ohio St. 1, followed.)"

We do not find the statute in question to be so vague as to overcome this presumption of constitutionality. The phrase "outstanding taxes, assessments, penalties, or charges" plainly includes those taxes, assessments, penalties and charges which were due and payable at the time of the application. The subsection further provides that it is a *condition* of issuance that there be no such outstanding taxes, assessments, penalties or charges.

Further the issue of constitutionality cannot be challenged in a declaratory judgment absent service on the Attorney General under R.C. 2721.12. *Malloy* v. *Westlake* (1977), 52 Ohio St. 2d 103 [6 O.O.3d 329]. Reese did not make such service.

Reese also argues, under this assigned error, that R.C. 3929.44(E) is in conflict with later-enacted R.C. 3929.86 and, therefore, R.C. 3929.86 must prevail. This position is untenable.

R.C. 3929.86[2] requires that where a claim for fire damage to a structure within a municipal corporation exceeds $5,000, no insurance company shall pay that claim unless a certificate is furnished by the county treasurer showing the existence or absence of delinquent taxes, assessments, penalties or charges

against the property. If such charges are outstanding, the insurance company is to pay that amount to the county treasurer. R.C. 3929.86(B)(2)(b). We find no conflict between this provision and R.C. 3929.44(E).

R.C. 3929.44(E) refers to the presence of outstanding taxes, assessments, penalties and charges against the property at the time application for insurance is made to Ohio Fair Plan. R.C. 3929.86 applies to all insurance companies regarding outstanding taxes, assessments, penalties and charges at the time a fire loss is incurred. The presence of such outstanding charges at the time of loss has no bearing upon the issuance of insurance under R.C. 3929.44(E). Had Reese's outstanding taxes been outstanding only at the time of loss rather than at the time of application, his policy could not have been cancelled. However, since R.C. 3929.44(E) makes the absence of such charges at the time of issuance a condition of issuance, the court properly found R.C. 3929.44(E) applicable.

The first assignment of error is overruled.

"II. Trial court erred in failing to grant the defendant's motion for judgment since the plaintiff neglected to file its answer or other pleading to the counterclaim of the defendant pursuant to Ohio Civil Rule 8[D]."

In his answer to the complaint Reese put forth a counterclaim for $40,000 under the insurance policy for the fire damage to the structure in the September 7, 1982 fire. Ohio Fair Plan did not file an answer to this counterclaim. Reese did not move for default judgment on his counterclaim, but after judgment was rendered in favor of Ohio Fair Plan he moved for judgment on the counterclaim which was subsequently denied.

The very substance of Ohio Fair

---

[2] Reporter's Note: The text of R.C. 3929.86, which appears in the Appendix of the opinion, has been deleted from the reported decision.

Plan's complaint was that the property insurance policy issued to Reese was void. Reese's counterclaim was that the policy was valid and he suffered a loss which was covered by the policy. Although a technical error was made when Ohio Fair Plan failed to file an answer to the counterclaim, there was no error in failing to grant Reese judgment on the counterclaim. The very nature of the complaint controverted the allegations of the counterclaim. When Reese failed to file for default judgment and proceeded to trial, he became bound by the court's decision on the validity of the policy. Although we reverse the court's decision for reasons discussed *infra,* Reese was not entitled to judgment on the counterclaim by virtue of Ohio Fair Plan's failure to file an answer to said claim.

The second assignment of error is overruled.

"III. That the trial court erred in failing to address itself to the waiver and estoppel issues raised by the defendant * * * [f]or the same plaintiff herein had paid a previous fire loss on May 7, 1982 without questioning (outstanding taxes * * *) [sic]."

This assignment of error is well-taken, but not for the reasons stated by appellant Reese.

Reese's replacement policy, the one at issue in the instant case, was issued with an effective date of May 22, 1982 and an expiration date of May 22, 1983. Any claim paid for a fire loss of May 7, 1982 was therefore under another policy. Whether or not that policy was valid is not at issue. Ohio Fair Plan did pay the claim on that fire. There was no allegation, and certainly no proof, that there were outstanding taxes, or a certification to the contrary, for the policy under which the claim for the May 7, 1982 fire was paid. Outstanding taxes at the time of a claim do not preclude recovery; they simply limit recovery to the insured, where the claim exceeds $5,000, to the amount of the claim less certain taxes and other expenses provided for in R.C. 3929.86.

It is, however, long-standing Ohio law that parties to insurance contracts must enter into such contracts with the utmost good faith, with neither party concealing material matters from the other. *Washington Mut. Ins. Co.* v. *Merchants & Manufacturers' Mut. Ins. Co.* (1856), 5 Ohio St. 450, 480. It is clear, as discussed below under the fourth assignment of error, that Reese made a material misrepresentation in his application and certification. It is equally important, however, that Ohio Fair Plan did not scrupulously adhere to the rules and regulations promulgated at Ohio Adm. Code 3901-1-18, specifically Ohio Adm. Code 3901-1-18(G)(1), which provides:

"(G) Application and issuance of policy.

"(1) In compliance with divisions (D) and (E) of section 3929.44 of the Revised Code, every application submitted to the 'Association' for a policy or binder *shall be accompanied by a sworn statement executed by the applicant on a form approved by the superintendent* of insurance certifying that

"(a) At least two insurance companies authorized to do business in Ohio have declined to grant the coverage requested in the application, and

"(b) That there are no outstanding taxes, assessments, penalties or charges with respect to the property to be insured." (Emphasis added.)

Ohio Fair Plan did not inform Reese that a sworn statement was necessary nor was there any indication that disclosure was made to applicants that failure to accurately meet this condition would result in denial and/or cancellation of the policy. Reese's certification was not a sworn statement, nor was there any indication on the form that it should have been.

The Ohio Department of Insurance

has filed an *amicus curiae* brief in the instant case and urges that Ohio Fair Plan should be held to a high standard of conduct in its association with potential insureds because it was statutorily created to meet the insurance needs of property owners in hard-to-insure areas. We agree.

Although Reese's misrepresentation concerning the outstanding taxes was material and goes to a condition of the insurance, Ohio Fair Plan is estopped from using this misrepresentation to cancel the insurance after a loss has occurred where Ohio Fair Plan has not followed the promulgated rules and has failed to clarify the import of R.C. 3929.44(D) and (E).

The necessity for a certification that there are no outstanding taxes, assessments, penalties or charges against a property is unique to insurance procured under the provisions of R.C. 3929.41 to 3929.49. As the policy behind these statutory provisions is to assure the availability of basic property insurance for hard-to-insure properties, it is incumbent upon Ohio Fair Plan to facilitate this policy by clear disclosure to potential insureds and by rigorous adherence to the promulgated rules and regulations.

Accordingly, the third assignment of error is sustained.

"IV. That the trial court erred in finding that the defendant, Claybourne Reese, intentionally with intent to defraud signed the certificate containing a material representation * * *."

To the extent that the court found there to be an intentional misstatement with intent to defraud, the assigned error is well-taken. Such would not, however, change the result of the case were it not for our disposition of the third assignment of error.

R.C. 3929.44(E) makes the certification that there are no outstanding taxes, assessments, penalties or charges against the property a *condition* for the issuance of insurance. As such, it is the truth or falsity of such statement which is material, rather than the intent with which such statement is made. The misrepresentation, whether intentional or not, was material because Ohio Fair Plan is not authorized to issue insurance where there are such outstanding charges. R.C. 3929.44(E).

Therefore, the fourth assignment of error is overruled.

"V. That the decision made by the trial court is contrary to law and against the manifest weight of the evidence."

Reese reiterates his arguments under the first four assignments of error in support of this assigned error. The error is well-taken to the extent discussed in the third assignment of error.

Accordingly, the judgment of the trial court is reversed. Ohio Fair Plan is estopped from cancelling the policy of insurance due to its failure to adequately follow the promulgated rules and regulations governing its existence. Where Ohio Fair Plan fails to require sworn statements to the conditions set forth in R.C. 3929.44(E) and where it fails to adequately disclose the necessity for outstanding taxes, assessments, penalties and charges to be paid before insurance can issue, it is estopped from using a misrepresentation as to such condition to cancel a policy after a loss has been incurred. The policy is not void under the circumstances of this case, and Ohio Fair Plan must treat Reese's claim for loss as one made under a valid policy of insurance.

The judgment is reversed and the policy is declared valid.

*Judgment reversed.*

DAY, C.J., concurs.

JACKSON, J., dissents.

JACKSON, J., dissenting. Respectfully, I dissent.

The state of Ohio has created an entity to provide hazard insurance for property which private insurance companies refuse to insure. This public entity is called the Ohio Fair Plan Underwriting Association ("Ohio Fair Plan"). By statute, Ohio Fair Plan cannot insure property upon which property taxes are owed.[3] The plain legislative intent was to make insurance available through a public entity where the owner is current in its taxes. The owner's attention is called to this eligibility requirement by the language of a "certificate" which must be separately signed.

The statute merely requires the owner to "certify" that there are no outstanding taxes. That is what the owner (appellant) did in the case at bar in order to obtain insurance. At that time there was $800 in delinquent taxes on the property. The majority concedes that this was a material misrepresentation, and that the policy of insurance would not have been issued but for this misrepresentation.

However, the majority notes that appellant not only lied on the certification, but also failed to make this representation under oath, as required by an administrative rule (but not required under the statute).[4] Ohio Adm. Code 3901-1-18(G)(1)(b) requires the certification of outstanding taxes to be a "sworn statement." From this additional technical omission *by the appellant,* the majority concludes that the appellee (Ohio Fair Plan) is estopped from claiming reliance upon the certification.

It would be rational to estop Ohio Fair Plan from claiming that a truthful certification was invalid because it was unsworn; there is no reason to find that Ohio Fair Plan did not rely upon a false certification, merely because it was unsworn.

I would affirm the decision of the trial court.

---

[3] R.C. 3929.44(E) provides:

"As a condition of the issuance of a binder or policy of basic property insurance or homeowners insurance, an applicant shall, in accordance with procedures and requirements set forth in rules promulgated by the superintendent, certify to the association that there are no outstanding taxes, assessments, penalties, or charges with respect to the property to be insured."

[4] A "certification" is "[t]he formal assertion in writing of some fact." Black's Law Dictionary (5 Ed. 1979).