**OWENS–CORNING FIBERGLAS CORPORATION**

v.

**AMERICAN CENTENNIAL INSURANCE COMPANY.**

Court of Common Pleas of Ohio,
Lucas County.

No. CI902521.

Decided Sept. 8, 1995.

264

[REDACTED]

*Connelly, Soutar & Jackson, William M. Connelly* and *Steven Smith;  Covington & Burling, Mitchell F. Dolin, Jackson Sharman* and *Eric Lasker;  Davis & Young Co., L.P.A.,* and *Martin J. Murphy,* for Owens–Corning Fiberglas Corporation.

*Shumaker, Loop & Kendrick, Peter Silverman* and *William Heywood;  Chadbourne & Park, Peter Hillman* and *Debra Petalkis,* for American Centennial Insurance Company.

Richard W. Knepper, Judge.

This matter is before the court on the motion *in limine* filed on July 28, 1995, by the plaintiff, Owens–Corning Fiberglas Corporation ("OCF"). Upon due consideration of the pleadings, memoranda of counsel, evidence, and applicable law, this court grants OCF''s motion.

As portions of this opinion expand on the law as set forth in this court's opinion and judgment entry filed February 22, 1995, ruling on the parties' motions for summary judgment, the following shall be considered an amendment and modification to Section C, "Fraud or Misrepresentation," of that opinion. This opinion, however, does not alter the outcome of the former ruling.

## I

OCF moves this court to preclude the defendant, American Centennial Insurance Company ("ACIC"), from submitting before the jury two components of its fraud claim against OCF.[1] Specifically, OCF seeks to prohibit ACIC from contending at trial that OCF committed fraud by failing to disclose in its insurance applications public estimates made by the United States Department of Health, Education and Welfare ("HEW") as to potential future asbestos liabilities and a public report based on the HEW estimates issued by the Washington Analysis Corporation ("Washington Analysis Report"). Additionally, OCF moves to exclude evidence at trial that OCF committed fraud by failing to disclose its legal interpretation of the language in ACIC's policies relating to trigger of coverage.

ACIC, on the other hand, argues that OCF was required, as a matter of law, to disclose information regarding both the Washington Analysis Report and OCF''s policy interpretations relating to the policies' trigger of coverage. ACIC bases its argument on the premises that OCF had a duty to act with the utmost good faith when disclosing information to potential insurers. According to ACIC, OCF''s failure to disclose this information perpetuated a fraud against ACIC.

## II

■ A motion *in limine* is designed "to avoid the injection into a trial of a potentially prejudicial matter which is not relevant and is inadmissible." *Rinehart v. Toledo Blade Co.* (1985), 21 Ohio App.3d 274, 278, 21 OBR 345, 349, 487

---

1. Originally, this motion was filed against the "defendants" collectively; however, it has been represented to the court that OCF has now settled with both Protective National Insurance Company and Associated International Insurance Company. This court, therefore, will determine only OCF's motion as it relates to ACIC.

N.E.2d 920, 924. In *Riverside Methodist Hosp. Assn. v. Guthrie* (1982), 3 Ohio App.3d 308, 310, 3 OBR 355, 358, 444 N.E.2d 1358, 1361, the court of appeals set forth the required two-step procedure:

"First, a consideration of the motion *in limine* as to whether any reference to the area in question should be precluded until admissibility can be ascertained during trial. Second, at the time when the party desires to introduce the evidence which is the subject of the motion *in limine*, there must be a second hearing or determination by the trial court as to the admissibility of the evidence, which is then determined by the circumstances and evidence adduced in the trial and the issues raised by the evidence."

■ A motion *in limine* is, therefore, a precautionary request, directed to the inherent discretion of the trial judge. *State v. Spahr* (1976), 47 Ohio App.2d 221, 1 O.O.3d 289, 353 N.E.2d 624.

"The sustaining of a motion in limine does not determine the admissibility of the evidence to which it is directed. Rather it is only a preliminary interlocutory order precluding questions being asked in a certain area until the court can determine from the total circumstances of the case whether the evidence would be admissible." Palmer, Ohio Rules of Evidence Rules Manual (1984), at 446, cited with approval in *State v. Grubb* (1986), 28 Ohio St.3d 199, 201, 28 OBR 285, 288, 503 N.E.2d 142, 145.

The inherent power of a court to control its proceedings is granted to it by Evid.R. 103(A) and 611(A). The use of the motion *in limine* serves the interest of judicial economy as well as those interests of counsel and the parties because it aids in reducing the possibility of the injection of error or prejudice into the proceedings. *Grubb, supra.*

### III

■ OCF generally argues against this court's prior ruling which required OCF to disclose with the utmost good faith when it negotiated with ACIC. For clarification of the law as it applies to ACIC's fraud claim, this court will revisit the question of OCF's duty.

Ohio courts have repeatedly held that there exists a special relationship between an insured and an insurer requiring the parties to act with the utmost good faith. See *Buemi v. Mut. of Omaha Ins. Co.* (1987), 37 Ohio App.3d 113, 524 N.E.2d 183. See, also, *Washington Mut. Ins. Co. v. Merchants & Mfr. Mut. Ins. Co.* (1856), 5 Ohio St. 450, 479 ("In the making of a contract for insurance, the parties are held to the utmost of good faith; the assured is presumed to know the condition of the property, and the dangers attending it; and is not at liberty to withhold information on an important and material matter known to increase

the risk."). See, also, *Ohio Fair Plan Underwriting Assn. v. Reese* (1984), 17 Ohio App.3d 54, 57, 17 OBR 108, 112, 477 N.E.2d 1199, 1204, relying on *Washington Mut.* ("It is, however, longstanding Ohio law that parties to insurance contracts must enter into such contracts with the utmost good faith, with neither party concealing material matters from the other."). See, also, *Harris v. Columbiana Cty. Mut. Ins. Co.* (1849), 18 Ohio 116, 122 ("The law is very strict in requiring of the insured the utmost good faith as well as the greatest accuracy, in his written application."). See, also, *Prudential Ins. Co. of Am. v. Carr* (C.P.1964), 94 Ohio Law Abs. 385, 388, 30 O.O.2d 373, 375, 199 N.E.2d 412, 414, citing *Stipcich v. Metro. Life Ins. Co.* (1928), 277 U.S. 311, 317, 48 S.Ct. 512, 513–514, 72 L.Ed. 895 ("Insurance policies are traditionally contracts *uberrimae fidei* and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option.").

OCF makes two arguments against the proposition that there exists a heightened duty between the parties to act with the utmost good faith. First, OCF argues there is no heightened duty because "the relationship between the insurer and the insured is purely contractual in nature." *Nationwide Mut. Ins. Co. v. Marsh* (1984), 15 Ohio St.3d 107, 109, 15 OBR 261, 262, 472 N.E.2d 1061, 1062. This court does not dispute that the relationship between an insured and insurer is contractual in nature, in that the terms of the policy must be mutually agreed upon to be effective. The holding in *Marsh,* however, does not address or, in this court's opinion, alter the rule that an insured and an insurer have a heightened duty to act with the utmost good faith when negotiating the policy.

Second, OCF argues that the duty to act with the utmost good faith originated from the doctrine of *uberrima fides* and, therefore, is not applicable in this context because the doctrine arose out of the specific circumstances of marine insurance. Based on the doctrine's origins, OCF asserts that *uberrima fides* solely applies to situations where the insurer is required to look only to the insured for all of the information on which to consider the issuance of the policy.

According to OCF, *uberrima fides* is not applicable in any situation where the insurer did not have to rely completely on the representations of the insured. When an insurer is able to investigate the subject of the insurance on its own, OCF contends this heightened duty of utmost good faith disclosure by the insured is not required. In support of its contention, OCF turns to the case of *Buemi, supra,* cited by this court as holding OCF to the duty to act with the utmost good faith when disclosing information to ACIC. OCF asserts that in *Buemi,* the insured was required to act with the utmost good faith because the insurer "must look to the insured for all of the information on which to consider the issuance of the policy." *Buemi, supra,* 37 Ohio App.3d at 116, 524 N.E.2d at 186. It is true that the insurer in *Buemi* relied solely on the representations of

the insured because no medical examination was required by the insurer before it would issue insurance. The insurer, however, could have investigated the insured's medical condition, but it did not. The court, nevertheless, held the insured to the utmost good faith standard.

Additionally, in support of its argument, OCF points the court to *Hartford Protection Ins. Co. v. Harmer* (1853), 2 Ohio St. 452, 473, which held:

"[I]n the absence of special provisions in the policy relating to the disclosure of facts material to the risk, all that is required of the insured is *that he shall not misrepresent or designedly conceal any such facts,* and that he answer fully and in good faith, all inquiries addressed to him by the insurer." (Emphasis *sic.*)

The court in *Harmer* analyzed the difference between marine insurance and fire insurance. The court explained that the heightened duty of disclosure owed in the situation of marine insurance is based on the fact that the insured possesses all the information available concerning the risk the insurer is considering undertaking. The insured is the only one with the information because "the subject of the insurance is generally beyond the reach, and not open to the inspection of the underwriter; often in distant ports or upon the high seas." *Harmer,* 2 Ohio St. at 472. Only the owners of the vessel and those in their employ are familiar with "the peculiar perils to which [the ship] may be exposed, too numerous to be anticipated or inquired about" by the insurer. *Id.* As opposed to marine insurance, when issuing fire insurance, the insurer has the opportunity to investigate and examine the property to be insured. According to *Harmer,* when issuing fire insurance, an insurer has a duty to investigate for itself and is not supposed to rely solely on the representations of the insured.[2]

Although *Harmer* sets forth the distinctions between marine insurance and fire insurance, this court would note that none of the cases cited for the general principle that an insured and insurer have a heightened duty to act with the utmost good faith dealt with marine insurance. See, *e.g., Buemi, supra* (insured was seeking health insurance coverage). See, also, *Washington Mut., supra* (insured sought fire insurance coverage). See, also, *Reese, supra* (insured was seeking insurance on his property). See, also, *Harris, supra* (insured sought insurance on the his property). See, also, *Carr, supra* (insured was seeking health insurance). In fact, none of the cases relied on qualified the doctrine as applying only to marine insurance.

---

2. Three years after *Harmer,* however, the Ohio Supreme Court held that "so far as the *principle* is concerned, as between marine and fire policies of insurances, in regard to concealment, there is no difference; the question in each instance being that of good faith, which forbids an improper and unjustifiable want of disclosure." (Emphasis *sic.*) *Washington Mut., supra,* 5 Ohio St. at 479.

The fact that *Harmer* gave an insurance company issuing fire insurance the duty to investigate does not lessen OCF's duty in this case. Unlike issuing insurance to cover losses due to fire at a particular, fixed, location, ACIC was negotiating to provide coverage for a vast array of risks, including coverage for asbestos-related injuries. OCF's risk was not of the nature that an underwriter could come out, have a look around, and assess the risk. This court, therefore, finds that the application of the doctrine of *uberrima fides*, requiring an insured to act with the utmost good faith, is not inconsistent with Ohio law under the present circumstances.

A.  *The HEW Estimates and the Washington Analysis Report*

OCF argues, in the alternative, that even if the doctrine of *uberrima fides* applied to this case, OCF was under no obligation to "disclose" to ACIC the existence of the publicly available HEW estimates and the Washington Analysis Report on these estimates because the information was equally available to both parties. This court, however, finds OCF's arguments on this matter unpersuasive.

OCF relies on *Aetna Ins. Co. v. Reed* (1877), 33 Ohio St. 283, for the contention that there is no fraud where the insurer and the insured "stand on an equal footing in relation" to the facts, as "the law will not lend its aid to help one thus situated and advised, if he voluntarily neglects to help himself." *Reed,* 33 Ohio St. at 292. The facts of *Reed,* however, make it inapplicable to the present case. *Reed* involved an insured who alleged he was fraudulently misled by the insurance adjuster. The adjuster convinced the insured that he did not have a claim against the insurance company, causing the insured to sign a settlement release. The court held that the relationship between the insured and the adjuster "was not one calculated to beget confidence or reliance" because the adjuster was merely attempting to strike the best bargain for his employer, and the insured should have realized this. Under those circumstances, the court held that the insured should have sought out legal advice on his own and he was not justified in relying on the "advice" of the adjuster.

The facts of *Reed* are distinct from the present case, making the holding of *Reed,* that the parties must investigate the matter for themselves, inapplicable. Unlike the parties in *Reed,* reliance on the representations of the other party during negotiations to purchase insurance is anticipated. OCF and ACIC were in a relationship where it was anticipated and expected that ACIC would rely on the representations of OCF when making its determination to provide insurance coverage.

Similarly, OCF's reliance on *Lexington Fire & Marine Ins. Co. v. Paver* (1847), 16 Ohio 324, is unpersuasive. In *Paver,* the insurance company sought to be

released from its policy because the insured had failed to disclose that the boat was cheaply constructed. The court stated in the body of its opinion that the insured could have assumed the insurer knew that smaller vessels were often constructed in such a poor manner. However, the court did not embrace in its syllabus a ruling that an insured is not required to disclose to an insurer facts which should be known to the insurer based on its business.[3] Furthermore, the court's finding that the insured did not defraud the insurer was not based on the fact that the insurer should have known smaller vessels were often poorly constructed. Rather, the court found that the insured had not defrauded the insurer because the information concealed was not material in that knowledge of the poor construction would not have influenced the insurer's decision to underwrite the boat. Based on the foregoing, this court is unwilling to construe *Paver* as holding that an insured does not have to provide an insurer with information the insurer should already know because of its area of business.

■ Finally, having reestablished OCF's duty to act with the utmost good faith, this court will further define OCF's duty. Since the court is applying the doctrine of *uberrima fides*, originally a doctrine of marine insurance, the court will be consistent and apply the portion of marine insurance codified in *Harmer*, which states that an insurer has "the right to exact a full disclosure of all the facts *known* to [the insured], which may in any way affect the risk to be assumed." (Emphasis *sic*.) *Harmer, supra,* 2 Ohio St. at 472. This court, therefore, holds that OCF had a duty to disclose to ACIC, with the utmost good faith, all material facts known to it which in any way affected the risk to be assumed by ACIC. Because OCF was required to disclose only what was known to it, the question before the court now turns to whether the HEW estimates and the Washington Analysis Report contained facts known to OCF which were required to be disclosed.

■ Generally in Ohio, fraud cannot be predicated upon promises or representations relating to future actions or conduct:

"Representations as to what will be performed or will take place in the future are regarded as predictions and are not fraudulent * * *." *Tibbs v. Natl. Homes*

---

3. S.Ct.R.Rep.Op. 1(B) provides that:

"The syllabus of a Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication."

The Ohio Supreme Court has long indicated that the syllabus, alone, states the law of the case. *State v. Wilson* (1979), 58 Ohio St.2d 52, 60, 12 O.O.3d 51, 56, 388 N.E.2d 745, 750–751. Any other words in an Ohio Supreme Court opinion are dicta, *id.*, and not a part of the court's decision, *Haas v. State* (1921), 103 Ohio St. 1, 7–8, 132 N.E. 158, 159–160. *Id.* at syllabus.

*Constr. Corp.* (1977), 52 Ohio App.2d 281, 286, 6 O.O.3d 300, 303, 369 N.E.2d 1218, 1222, citing 24 Ohio Jurisprudence 2d 646, 647, Fraud and Deceit, Section 38. See, also, *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 607 N.E.2d 1140; *Arber v. Essex Wire Corp.* (C.A.6 1974), 490 F.2d 414; *Leibowitz v. Leibowitz* (Jan. 2, 1992), Summit App. No. 14971, unreported, 1992 WL 2939.

The insured "is not bound to communicate [its] own expectations, and opinions and speculations upon facts." *Harmer, supra*, 2 Ohio St. at 471. Even in fiduciary relationships, the duty to disclose is limited to present, material information, and does not extend to speculations and forecasts of potential future value. *Isroff v. Westhall Co.* (Feb. 21, 1990), Summit App. No. 14184, unreported, 1990 WL 15192.

This court finds that the HEW estimates and Washington Analysis Report did not contain *facts* known to OCF regarding what OCF actually would experience in terms of loss due to asbestos injuries. Rather, the HEW estimates and the Washington Analysis Report, like numerous other reports and articles, contained predictions and opinions regarding the potential asbestos liabilities that asbestos manufacturers *may* be faced with in the future.

It would be incongruous to hold that an insured is not required to disclose its own expectations, opinions, and speculations upon facts, yet require OCF to disclose a third party's predictions and speculations. The court, therefore, finds that OCF had no duty to disclose the HEW estimates or the Washington Analysis Report to ACIC. Accordingly, ACIC is preliminarily precluded from offering the HEW estimates or the Washington Analysis Report at trial as evidence that OCF fraudulently misled ACIC by concealing this information.

B. *OCF's Interpretation of Policy Language*

▪ Statements which constitute a representation of the meaning of the policy language are representations of law. In Ohio, the construction of an insurance contract is always a question of law for the courts. *Leber v. Smith* (1994), 70 Ohio St.3d 548, 639 N.E.2d 1159, syllabus. See, also, *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.* (July 12, 1995), Summit App. No. 16993, unreported, 1995 WL 422733.

OCF's interpretations regarding the application of the policy language would have merely been OCF's opinion regarding the law as it related to the policy. Such interpretations of the law are not actionable in fraud because interpretations of policy language is a question of law for the court to decide. Therefore, if disclosure of such an interpretation is not actionable in fraud, the nondisclosure of the same interpretation also is not actionable in fraud.

OCF had no duty to disclose its interpretations regarding the application of the policy language with regard to the trigger of coverage. Accordingly, ACIC is preliminarily prohibited from introducing evidence at trial that OCF fraudulently misled ACIC by not disclosing it legal interpretation of the policy language regarding trigger of coverage.

## JUDGMENT ENTRY

It is ORDERED that Owens–Corning Fiberglas Corporation's motion *in limine* is GRANTED.

*Motion granted.*

