INDIANA INSURANCE COMPANY,
Plaintiff,

v.

MIDWEST MAINTENANCE,
INC., Defendant.

No. C–3–99–351.

United States District Court,
S.D. Ohio,
Western Division.

March 26, 2001.

Christopher Mark Bechhold, Thompson, Hine & Flory, Cincinnati, OH, for Indiana Ins. Co.

Michael L. Cargill, Dungan, McGraw & Kappers Co., Troy, OH, for Midwest Maintenance.

Dennis Allen Becker, Cincinnait, OH, for Mary Lou Patrick and Ralph E. Patrick.

Barry David Jacobson Levy, Cincinnati, OH, for Judy Marshall and Peter Marshall.

## DECISION AND ENTRY SUSTAINING MOTION FOR PARTIAL JUDGMENT ON PLEADINGS ON DEFENDANT'S COUNTERCLAIMS (DOC. #16) FILED BY PLAINTIFF INDIANA INSURANCE COMPANY

RICE, Chief Judge.

This litigation stems from an insurance coverage dispute between Plaintiff Indiana Insurance Company ("Indiana") and Defendant Midwest Maintenance, Inc. ("Midwest"). On July 30, 1999, Indiana filed a Complaint in this judicial forum, seeking a declaratory judgment regarding its obligation under a commercial general liability insurance policy to defend and to indemnify Midwest in a state-court personal-injury action.[1] (Doc. # 1). In response, Midwest has filed three counterclaims against Indiana. (Doc. # 14). The first counterclaim seeks a declaratory judgment that Indiana *is* contractually obligated to defend and to indemnify Midwest. The second and third counterclaims set forth negligence and fraudulent misrepresentation causes of action against Indiana. Pending before the Court is Indiana's Motion for Partial Judgment on the Pleadings on Midwest's counterclaims (Doc. # 16). Indiana's Motion is directed only toward Midwest's second and third counterclaims.

In support of its Motion, Indiana asserts that Midwest's second and third counterclaims fail to state a claim upon which relief may be granted. Pursuant to Fed. R.Civ.P. 12(h)(2), Indiana has presented its argument through a Rule 12(c) Motion for Judgment on the Pleadings, given that an Answer has been filed in this action. In *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 11 (6th Cir.1987), the Sixth Circuit articulated the legal standards governing Indiana's Motion. In particular, Midwest's counterclaims should be dismissed " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' " contained therein. *Id.* (citations omitted). The counterclaims must be construed in the light most favorable to Midwest, and all well-pleaded facts must be accepted as true. *Id.* (citations omitted).

With the foregoing standards in mind, the Court concludes that Indiana is entitled to judgment on the pleadings with respect to Midwest's second and third counterclaims. In support of those counterclaims, Midwest alleges that Indiana has provided it with a series of commercial general liability insurance policies since 1988. (Doc. # 14 at ¶ 11). According to Midwest, each policy included a "pollution exclusion" with language similar, if not identical, to the language contained in the policy at issue in the present case. (*Id.* at ¶ 12). Midwest alleges that Indiana previously paid various claims brought against it for over-spraying waterproofing materials on buildings. (*Id.* at ¶ 13–14). Furthermore, when paying such claims, Indiana never informed Midwest that the

---

[1]. The plaintiffs in the state-court lawsuit allege that Midwest negligently sprayed waterproofing material on a building. As a result, the waterproofing material and toxic fumes allegedly entered the building and caused bodily injury to the plaintiffs. In the present declaratory judgment action, Indiana contends that it has no duty to defend or to indemnify Midwest in the state-court lawsuit, because a "pollution exclusion" precludes coverage for such an occurrence.

claims were excluded from coverage by virtue of a "pollution exclusion." (*Id.* at ¶ 15). In addition, Indiana never informed Midwest that the substances it sprayed could be considered "pollutants" under a policy exclusion. (*Id.* at ¶ 16).

Based upon the foregoing factual allegations, Midwest sets forth the following negligence counterclaim against Indiana:

17. Indiana owed Midwest a duty to disclose during the life of such insurance contracts that the waterproofing related claims paid by Indiana were subject to denial by virtue of the pollution exclusion language of the policies which it breached by its repeated failure to so notify Midwest prior to the instant claim.

18. Midwest has been damaged as the proximate result of the negligence of Indiana Insurance in an as yet undetermined amount but at least to the extent of the expenses incurred to date in the defense of this lawsuit.

(Doc. # 14 at ¶ 17–18).

In support of its fraudulent misrepresentation counterclaim, Midwest relies on the same factual assertions set forth above and alleges:

20. Throughout the ten-year series of contractual relationships between Indiana and Midwest, Indiana has by virtue of its payment of waterproofing related claims, implicitly misrepresented to Midwest that such claims were covered claims under the terms of the general liability insurance contracts in effect at the time of each such waterproofing related claim.

21. Midwest has reasonably relied upon such representations of Indiana to its detriment and has suffered damages as the direct result of such reliance. (*Id.* at ¶ 20–21).

In support of its Motion, Indiana insists that Ohio law did not impose upon it a legal duty to inform Midwest that it was voluntarily paying non-covered claims that could have been denied by virtue of a policy exclusion.[2] (Doc. # 16 at 5). In response, Midwest fails to cite any legal authority for the existence of such a duty. (Doc. # 17). Instead, Midwest argues that if its counterclaims "are so devoid of fact and law as Indiana seems to suggest, they can be disposed of summarily" through summary judgment. (*Id.* at 3–4).

■■■ Upon review, the Court agrees that Indiana had no legal duty to inform Midwest that it was voluntarily paying non-covered claims. The existence of a duty in a negligence action is a question of law for the Court to decide. *See, e.g., Mussivand v. David,* 45 Ohio St.3d 314, 317, 544 N.E.2d 265, 269 (1989). Under Ohio law, an insurer's bad faith refusal to pay a claim by its insured will give rise to a tort action against the insurer, irrespective of any liability arising from the breach of the underlying contract. *See, e.g., Spremulli's American Service v. Cincinnati Ins. Co.,* 91 Ohio App.3d 317, 322, 632 N.E.2d 599, 602 (1992). In the present case, however, Midwest's negligence claim is not based on any bad faith refusal of

**2.** Indiana also insists that it had a contractual right to pay non-covered claims under the terms of the insurance policies that it issued to Midwest. (Doc. # 16 at 6). In the context of the present Motion for Judgment on the Pleadings, however, this argument is unpersuasive, because the various policies issued to Midwest over the last 10 years are not part of the pleadings. Indiana also argues that Midwest's claim in the present case is one sounding in contract and not tort. (*Id.*). In support of this argument, however, Indiana merely repeats its assertion that Midwest's tort claim is based on a "non-existent legal duty." (*Id.*).

Indiana to defend or to indemnify in the pending state-court action. Rather, Midwest contends that Indiana had a legal duty to explain that prior claims brought against Midwest were not covered losses, even though Indiana voluntarily paid those claims. The Court finds absolutely no support in Ohio law for such a proposition. As a policy matter, imposing such a duty on an insurer would discourage the good-faith, voluntary settlement of questionable claims by creating the possibility of the insurer facing tort liability by doing so. Having found no Ohio case law to support the proposition that the duty alleged by Midwest actually exists, the Court declines to create such a duty from whole cloth. Accordingly, the Court will sustain Indiana's Motion for Judgment on the Pleadings, insofar as it relates to Midwest's negligence counterclaim.

■ Finally, the Court concludes that Midwest's fraudulent misrepresentation counterclaim also fails to state a claim upon which relief may be granted. To establish a claim of fraudulent misrepresentation, a party must prove: (1) a representation; (2) which is material; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying on it; (5) justifiable reliance upon the representation; and (6) a resulting injury proximately caused by the reliance. *Cardi v. Gump*, 121 Ohio App.3d 16, 22, 698 N.E.2d 1018, 1022 (1997).

■ In the present case, Indiana properly notes that Midwest has not alleged the fourth element, namely the *intent* to mislead. (Doc. # 16 at 8). Absent such an allegation, Midwest's third counterclaim fails to state a claim upon which relief may be granted. Although Midwest's pleading defect could be cured by the filing of an amended counterclaim, the Court discerns no purpose in allowing Midwest to do so in the present case, because its fraudulent misrepresentation counterclaim fails for at least two more fundamental reasons. *First*, ordinarily, whether a given claim is covered under the terms of an insurance policy is a question of law. *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 436 N.E.2d 1347, 1348 (1982). Under Ohio law, a party's opinion on the issue of coverage has been found unactionable in fraud. As the court explained in *Owens–Corning Fiberglas Corp. v. American Centennial Ins. Co.*, 74 Ohio Misc.2d 263, 660 N.E.2d 823 (1995):

Statements which constitute a representation of the meaning of the policy language are representations of law. In Ohio, the construction of an insurance contract is always a question of law for the courts. *Leber v. Smith* (1994), 70 Ohio St.3d 548, 639 N.E.2d 1159, syllabus. *See, also, Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.* (July 12, 1995), Summit App. No. 16993, unreported, 1995 WL 422733.

OCF's interpretations regarding the application of the policy language would have merely been OCF's opinion regarding the law as it related to the policy. Such interpretations of the law are not actionable in fraud because interpretations of policy language is a question of law for the court to decide. Therefore, if disclosure of such an interpretation is not actionable in fraud, the nondisclosure of the same interpretation also is not actionable in fraud.

*Id.* at 828.

*Second*, given that Indiana had no legal duty to disclose to Midwest that it was voluntarily paying non-covered claims, the failure to make such a disclosure logically *cannot* support a cause of action for fraudulent misrepresentation. Therefore, the

Court need not grant Midwest leave to amend its fraudulent misrepresentation counterclaim.[3] For the foregoing reasons, any attempted amendment by Midwest would be futile, as the amended counterclaim still could not survive a motion to dismiss for failure to state a claim upon which relief may be granted. *See, e.g., Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir.2000). Accordingly, the Court will sustain Indiana's Motion for Judgment on the Pleadings, insofar as it is directed toward Midwest's fraudulent misrepresentation counterclaim.

Based on the reasoning and citation of authority set forth above, the Court hereby sustains Indiana's Motion for Partial Judgment on the Pleadings (Doc. # 16), which is directed toward Midwest's second and third counterclaims for negligence and fraudulent misrepresentation. Those counterclaims are dismissed, with prejudice, as Midwest can prove no set of facts that would entitle it to relief on the counterclaims.[4] Midwest's first counterclaim, which seeks a declaratory judgment regarding Indiana's contractual obligation to defend and to indemnify, remains viable in this action.

---

3. Although Midwest has not sought leave to amend, the Court ordinarily would grant leave, *sua sponte,* if an amendment would enable Midwest to state a claim upon which relief could be granted.

4. For the reasons set forth, *supra,* Indiana's prior payment of claims without informing Midwest of its belief that those claims were excluded from coverage will not support a tort action against the insurance company. The Court notes, however, that Midwest has also relied on Indiana's prior payment of claims to support waiver and estoppel arguments with respect to the insurance company's present effort to rely upon a "pollution exclusion" to deny coverage. (*See* Doc. # 14 at ¶ 5–6). Nothing in this Decision and Entry should be construed as an expression of the Court's opinion on the validity of Midwest's waiver and estoppel arguments, which are not presently before the Court. For present purposes, the Court holds only that Indiana's prior course of conduct does not support a tort action for negligence or fraudulent misrepresentation.